Donald LOCK, Appellant,

v.

STATE of Indiana, Appellee.

No. 1278S284.

Supreme Court of Indiana.

May 12, 1980.

Howard R. Cohen, Indianapolis, for appellant.

Theodore L. Sendak, Atty. Gen., Thomas D. Quigley, Deputy Atty. Gen., Indianapolis, for appellee.

PIVARNIK, Justice.

Defendant-appellant Donald Lock was charged in Allen Circuit Court with first degree (felony) murder, Ind.Code § 35–13–4–1 (Burns 1975), and second degree murder, § 35–1–54–1. These charges arose out of the rape and stabbing death of Nena Wallis in Fort Wayne on February 20, 1974. The cause was venued, over appellant's objection, to the Marshall Circuit Court, and thereafter transferred to the Marshall Superior Court. The trial of this case began on July 6, 1978, and the jury returned guilty verdicts on both counts on July 21.

Appellant raises thirteen issues for our consideration on this appeal, concerning: (1) whether the Marshall Circuit Court erred in transferring the cause to the Marshall Superior Court; (2) whether the trial court erred, in several instances, in refusing to allow the defendant to act as co-counsel; (3) whether the trial court erred in allowing the prosecutor to question the defendant concerning his participation as co-counsel, his *pro se* motion for a change of venue, and a prior finding relating to appellant's competency; (4) whether the trial court committed error by admitting certain psychiatric testimony; (5) whether the trial court erred in admitting testimony from a physician concerning appellant's sanity; (6) whether appellant was denied the right to consult with his attorney; (7) whether the trial court denied appellant the effective assistance of trial counsel; (8) whether the trial court erred in permitting "Jane Doe" to testify; (9) whether the trial court erred in refusing to grant a change of judge; (10) whether the trial court committed error by sentencing appellant for his "natural life"; (11) whether the trial court erred in giving certain instructions and refusing certain instructions tendered by the defendant; (12) whether the trial court erred in refusing to instruct the jury after the jury requested an additional instruction; and (13) whether the evidence is sufficient to sustain the conviction.

I.

Appellant first claims error in the Marshall Circuit Court's transfer of this case to

the Marshall Superior Court. Ind.Code § 33–5–35.5–16 (Burns 1975), which is part of the statute creating the Marshall Superior Court, provides in part:

. *Transfer of cases from and to circuit court.* The judge of the circuit court may, with the consent of [the superior] court, transfer any action, cause or proceeding filed and docketed in circuit court to [the superior] court . . . . .

There is no question that this statute was fully complied with in this case. Judge Huff of the Marshall Circuit Court obtained the consent of Superior Court Judge Chipman before transferring the cause. Such a transfer was discretionary, and appellant does not allege or show an abuse of that discretion.

■ Appellant argues that, because this transfer was effected on the prosecutor's motion, the result was actually a change of venue from the judge. Therefore, appellant contends, the procedural requirements of a venue change should have been met in this case before the Marshall Superior Court could have assumed jurisdiction. As the State correctly observes, however, the court was not bound to act only *sua sponte* in transferring the cause. The mere fact that the prosecutor brought the matter to the court's attention did not transform the transfer into a change of venue from either the county or the judge. Further, the case remained venued in Marshall County, in a court of equal jurisdiction. Ind.Code § 35–5–35.5–3 (Burns 1975). Moreover, even if the effect of the transfer was, as appellant claims, a change of venue from the judge, appellant can show no prejudice. While Judge Chipman of the Superior Court did assume jurisdiction after the cause was transferred, at some point in the proceedings another change of judge was effected, because the record reflects that Special Judge McLaughlin sat as trial judge in this case. This issue is without merit.

## II.

Appellant Lock next argues the trial court erred in refusing to allow him to act as co-counsel in his cause. He cites four instances during the course of the proceedings in which, he claims, the court acted improperly in response to his attempts to assist in the conduct of the defense. Two of these instances involve actions taken by defense counsel on appellant's behalf, and two concern the trial court's refusal of appellant's requests to actively participate as co-counsel in the proceedings. Appellant was represented by at least one attorney of record when each of these instances arose.

Appellant filed a *pro se* motion for a change of venue from Allen and surrounding counties on August 29, 1974. Thomas Ryan, the Allen County Public Defender, was defense counsel at this time. The Allen Circuit Court. granted appellant's motion and named six counties for the parties to strike and select from. Appellant then sent a letter to his attorney, naming the three counties he wished stricken. One of these was, of course, Marshall County. However, before the Public Defender's office received the letter, counsel met informally with the prosecutor and proceeded to strike. counties. When appellant became aware that his cause had been venued to Marshall County, he again objected to·venue. He now argues that because he personally filed the motion, only he could strike the counties which the Allen Circuit Court names in response to the motion.

■ This argument is without merit. First, appellant was represented by counsel at the time he filed this motion. He had given no indication that he wished to discharge his attorney and proceed *pro se. See Russell v. State,* (1978) Ind., 383 N.E.2d 309. As we noted in *Bradberry v. State,* (1977) 266 Ind. 530, 536–37, 364 N.E.2d 1183, 1187, *quoting Faretta v. California,* (1975) 422 U.S. 806, 820–21, 95 S.Ct. 2525, 2534, 45 L.Ed.2d 562, 573: "[W]hen a defendant consents at the outset to accept counsel as his representative, 'law and tradition may allocate to counsel the power to make binding decisions of trial strategy in many areas.'" It *was within the trial court's discretion to* accept and respond to this *pro se* motion. Allowing this hybrid representation which appellant wished to conduct was also purely

discretionary with the court. *Coonan v. State,* (1978) Ind., 382 N.E.2d 157; *Bradberry v. State, supra.*

■ Secondly, even if the court had implicitly granted appellant the privilege of presenting a hybrid defense, appellant did not indicate when he filed this motion that he wished to personally participate in the striking of counties. Neither the court nor defense counsel was aware of appellant's alleged desire to personally participate in the striking. In fact, appellant's letter to his attorney indicated that he wished counsel to do the striking for him. Thus, it is obvious that appellant's present dissatisfaction is with the result, not with the fact that he was not able to personally participate in achieving that result. *See Russell v. State,* (1978) Ind., 383 N.E.2d 309, 312. The Allen Circuit Court did not err in allowing counsel to strike counties on appellant's behalf, and venue properly lay in the Marshall Circuit and Superior Courts.

■ The record indicates that a portion of the pretrial conference was held outside appellant's presence. Appellant contends that he was thus denied the effective assistance of counsel because he was not permitted to personally participate along with his attorney. However, appellant had no Sixth Amendment right to act as co-counsel. *Coonan v. State, supra; Bradberry v. State, supra.* Appellant's attorneys were, of course, present at the pretrial conference. We held in *Ard v. State,* (1958) 238 Ind. 222, 149 N.E.2d 825, that a defendant's absence from proceedings other than trial, verdict and sentencing does not constitute error where he is represented by counsel and has not been denied his substantial rights. *See Campion v. State,* (1927) 199 Ind. 129, 154 N.E. 802. Since the trial court here was not constitutionally required to accept appellant's hybrid form of representation, appellant had no Sixth Amendment right to be present at the pretrial proceedings. This argument is without merit.

■ This reasoning also applies to appellant's claim that he should have been allowed to participate as co-counsel during the trial of his cause. The proposed presentation of a hybrid defense was a matter properly committed to the trial court's discretion, and appellant Lock is a splendid example of why this must be so. The record in this case is full of instances in which Lock was abusive and disrespectful of the court, including a comment to the judge during arraignment that "[y]ou wouldn't make a scab on a judge's ass." Record at 23. It appears that, in spite of this behavior, the trial court did allow Lock to employ a hybrid form of representation for some time. However, at some point in the proceedings, this privilege was revoked. This revocation apparently occurred sometime between October 7, 1976, and January 18, 1978. The record is silent regarding anything that occurred in this case in this time period. Thus, the specific reasons for the court's actions are not clear. However, approximately one week before the trial began, appellant and his attorneys moved that he be allowed to again act as co-counsel. This request was refused. In light of appellant's previous disruptive behavior, we do not believe the trial court abused its discretion by refusing this request. *See Coonan v. State, supra; German v. State,* (1978) Ind., 373 N.E.2d 880; *Bradberry v. State, supra. See also Illinois v. Allen,* (1970) 397 U.S. 337, 90 S.Ct. 1057, 25 L.Ed.2d 353.

■ Appellant Lock next asserts the trial court erred in refusing to allow him to participate in the *voir dire* of the jury. Defense counsel indicated approximately five months before trial that he and appellant wanted appellant to have the opportunity to ask each potential juror a question on *voir dire.* The trial court expressed its disapproval of such a procedure at that time. Nevertheless, appellant expressed this desire again in an oral motion shortly before *voir dire* actually began. Trial counsel argued that "studies have shown" that juror prejudice can sometimes be exposed during *voir dire* if the defendant personally asks each prospective juror if he thinks he can give the defendant a fair trial. When the motion to participate in *voir dire* was denied, counsel requested a continuance so

that he could gather and present evidence in support of this theory. Counsel offered to produce experts from Indiana University who, he claimed, would establish this theory. He did not state specifically what this evidence was or who would testify to the "studies" to which he referred. Even if this evidence was, in fact, available and somehow relevant to this case, counsel was aware of the trial court's previous ruling on this request, and there is no reason why counsel could not have produced this evidence well in advance of *voir dire* and without necessitating a continuance. This case went to trial approximately four and one-half years after the crime was committed. The trial court was completely justified in refusing to allow any more delays in the proceedings, *see Aron v. State,* (1979) Ind., 393 N.E.2d 157, and we hold he did not abuse his discretion in refusing to allow Lock to participate in *voir dire. See, e. g., Roberts v. State,* (1978) Ind., 373 N.E.2d 1103; *Roby v. State,* (1939) 215 Ind. 55, 17 N.E.2d 800.

### III.

■ Appellant Lock alleges the trial court erred in permitting the prosecutor to question him in specific areas on cross-examination. First, he claims the prosecutor should not have been allowed to ask questions regarding appellant's prior participation as co-counsel in this case. He argues this had the effect of penalizing him for the exercise of his Sixth Amendment right to counsel. In support of this proposition, he cites *Simmons v. United States,* (1968) 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247. Once again, this argument, and appellant's reliance on *Simmons,* are based on the erroneous premise that appellant had a constitutional right to act as co-counsel. Testimony from other witnesses had established that appellant boasted to fellow jail inmates that he was an attorney and was going to attempt to beat the charges against him by presenting an insanity defense. Also in connection with appellant's insanity defense, evidence had been presented that appellant was nearly mentally retarded and had difficulty communi-

cating with people. Thus, the prosecutor was, by these questions, merely responding to evidence appellant had introduced. "A defendant may not be allowed to open an issue and have it closed at his convenience." *Fortson v. State,* (1978) Ind., 379 N.E.2d 147, 153. We fail to see how evidence that appellant had acted as co-counsel could have been harmful or prejudicial to appellant in this case.

■ Secondly, appellant argues the trial court erroneously allowed the prosecutor to question him concerning his *pro se* motion for a change of venue. This motion was admitted into evidence on cross-examination of the defendant. This was also a situation where the prosecutor was responding to evidence first introduced by appellant. Documents introduced by the defense indicated, as stated above, that Lock was of very low intelligence and had difficulty communicating with people. A copy of the motion for change of venue was admitted for the limited purpose of showing appellant's literacy and mental capacity. A plea of insanity opens up all the defendant's life for examination. *Flewallen v. State,* (1977) 267 Ind. 90, 368 N.E.2d 239. Further, evidence which might otherwise be inadmissible may be admissible on the question of sanity. The trial court did not err in admitting evidence of Lock's *pro se* motion for a change of venue. Moreover, because appellant had counsel at the time he filed this *pro se* motion and had not expressly waived his right to counsel, he was not, as he claims, exercising a Sixth Amendment right when he filed this motion. *Faretta v. California, supra; Coonan v. State, supra.*

■ Thirdly, appellant claims the prosecutor should not have been permitted to question him concerning a prior finding of competency in an unrelated case. On direct examination, appellant testified that he had been charged with rape several years earlier and had been sent to the Richmond Mental Hospital for treatment at the recommendation of court-appointed psychiatrists. On cross-examination, the prosecutor followed up on this evidence by asking appel-

lant if it were not true that he had been found competent to stand trial on that charge. Defendant's objections were overruled. However, this question was never answered, and the prosecutor proceeded to explore this matter in another way without objection.

█ The evidence on this issue showed that appellant had been discharged from the Richmond Hospital and sent back to Allen County for further proceedings in that case. As we noted above, a plea of insanity opens the door for the admission of testimony as to the defendant's entire life. All "evidence which has a logical reference to defendant's sanity" is admissible on this issue. *Sceifers v. State*, (1978) 267 Ind. 687, 696, 373 N.E.2d 131, 136. Moreover, appellant himself raised the fact that he had been sent to Richmond Hospital after an earlier rape charge. The trial court did not err in allowing the prosecutor to bring out testimony regarding the disposition of that earlier charge. *Fortson v. State, supra.*

### IV.

█ Appellant Lock argues the trial court erred in admitting certain psychiatric testimony. Dr. Byron Kilgore testified as a court-appointed psychiatrist, pursuant to Ind.Code § 35–5–2–2 (Burns 1975). He testified that he believed appellant was sane when this incident occurred. He was of the opinion that Lock "fulfills the entire definition of an anti-social personality," and he went on to define what he meant by "anti-social personality." Dr. Kilgore then testified as to what appellant had told him about the commission of this crime. Dr. Kilgore analyzed this version of the incident in the context of the insanity issue. Over defendant's objection, Kilgore explained in detail the different types of rape, and the factual characteristics of those types, within the context of an anti-social personality. Appellant argues this evidence was irrelevant and highly prejudicial.

We think the trial court properly admitted this evidence. Dr. Kilgore testified generally that certain facts of the present case were consistent with the patterns exhibited in rapes of the sort he discussed which tend to indicate an anti-social personality. Thus, this testimony tended to show that an aggressive rape of Nena Wallis was at least consistent with the types of rape which indicate an anti-social personality. This testimony, therefore, was relevant to show that appellant was not legally insane when he raped Nena Wallis. As we noted in *Bruce v. State*, (1978) Ind., 375 N.E.2d 1042, 1074: "In Indiana 'evidence tending to prove a material fact is admissible, even though its tendency in that direction may be exceedingly slight.'" (*quoting Pirtle v. State*, (1975) 263 Ind. 16, 34, 323 N.E.2d 634, 643.) The trial court did not err in admitting this evidence on the issue of insanity.

### V.

█ The next argument appellant sets forth is that the trial court improperly permitted a physician, Dr. Ahlbrand, who is not a psychiatrist, to give an opinion as to appellant's sanity. Under questioning by the court, Dr. Ahlbrand stated that he was a court-appointed physician. On cross-examination by defense counsel, Dr. Ahlbrand freely acknowledged that he is not a psychiatrist and is not trained in psychiatry. Defense counsel at no time objected to Dr. Ahlbrand's testimony, nor did he move to have the testimony stricken or the jury admonished to disregard it. Therefore, any error has been waived. *Gutierrez v. State*, (1979) Ind., 395 N.E.2d 218, 222; *Bell v. State*, (1977) 267 Ind. 1, 7, 366 N.E.2d 1156, 1160.

### VI.

█ Appellant contends he was prevented, during the trial, from consulting with his attorney. The record reveals that this incident occurred while appellant was testifying. On cross-examination by the prosecutor, defense counsel objected to a question and requested permission to be heard outside the presence of the jury. This request was granted and a brief argument to the court took place while the jury was out of the room. When the issue was resolved by the court, the jury was called back into

court. As the jurors were filing into the room, appellant, still seated at the witness stand, began a discussion with his attorney. The State objected to this consultation. Appellant thus claims he was denied his Sixth Amendment right to consult with his attorney.

We think there is no merit to this issue. First, appellant incorrectly characterizes this break in the proceedings as a "recess." The court was waiting only for the jury to return following the argument, and, in fact, the record indicates the jurors had begun to file back into the courtroom when appellant and defense counsel began their discussion. Defense counsel did not request a recess so that he might further consult with Lock. In fact, he does not argue to this Court on appeal that a recess should have been taken for that purpose.

In *Geders v. United States*, (1976) 425 U.S. 80, 91, 96 S.Ct. 1330, 1337, 47 L.Ed.2d 592, 601, the United States Supreme Court held that "an order preventing petitioner from consulting his counsel 'about anything' during a 17-hour overnight recess between his direct- and cross-examination impinged upon his right to the assistance of counsel guaranteed by the Sixth Amendment." However, *Geders* is readily distinguishable from the case before us. Here, the delay in the proceedings amounted to only a few minutes at most. This is a vastly different situation from the seventeen-hour overnight recess found in *Geders*. In addition, the proceedings in the case before us had not been formally suspended. The cross-examination of Lock was due to resume in a matter of a few seconds from the time Lock and his counsel began their discussion. Moreover, the interruption which precipitated this incident occurred after the second question asked on cross examination. On the other hand, as the Court in *Geders* recognized, a seventeen-hour overnight recess is a time when a defendant would normally confer with counsel. Appellant does not allege that this discussion concerned matters which could not have been covered adequately prior to appellant's testimony and without a delay in the proceedings. *Geders v. United States, supra*, 425

U.S. at 90–91, 96 S.Ct. at 1336–37, 47 L.Ed.2d at 600–01. *See United States v. Leighton*, (2d Cir. 1967) 386 F.2d 822, 823, *distinguished in Geders v. United States, supra*, 425 U.S. at 89 n.2, 96 S.Ct. at 1336, 47 L.Ed.2d at 600. *See also People v. Noble*, (1969) 42 Ill.2d 425, 248 N.E.2d 96. Appellant's Sixth Amendment rights were not infringed.

## VII.

 Appellant Lock raises another instance in which he claims the trial court's actions denied him the effective assistance of counsel. During the cross-examination of appellant, the prosecutor asked him about a prior finding of competency in an unrelated case. *See* Issue III, *supra*. Defense counsel objected and received permission to approach the bench. At the bench, counsel requested that the jury be excused so that he might present further argument on his objection. The trial court refused this request and required counsel to make his argument at the bench. Counsel objected to this procedure and accused the judge of "hampering" counsel's representation of Lock. Counsel asserted that co-counsel and the documents upon which he planned to refer in making argument were at the counsel table. Counsel also demanded that the record reflect that the court was forcing counsel to make his argument in a whisper.

 We hold the trial court did not deny appellant his Sixth Amendment rights. There is no showing that counsel could not have returned to the counsel table to consult the documents he felt were important, or to consult with co-counsel. Counsel did not even request permission to do this. Also, even if we accept counsel's claim that the trial court was forcing counsel to argue in a whisper, appellant has not shown that he was unable to say in a whisper what he wanted to say aloud. The trial court has a great deal of discretion in managing the conduct of trial proceedings, and we do not believe that discretion was abused in this case. *See generally Vaughn*

*v. State,* (1978) Ind., 378 N.E.2d 859. This issue is without merit.

## VIII.

■ Appellant Lock alleged in his motion to correct errors that the trial court erred in permitting a woman to testify under the pseudonym "Jane Doe." This allegation is also listed as error in appellant's brief under the Issues Presented For Review. However, appellant fails to make any argument on this issue. Therefore, the issue is waived. Ind.R.App.P. 8.3(A)(7). *Ashbaugh v. State,* (1980) Ind., 400 N.E.2d 767, 773.

## IX.

Next, appellant Lock contends the trial court erred when it refused to grant his motion for a change of judge. He also argues the court committed error when it refused to allow him a ten-day continuance during the hearing on this motion. Appellant's motion for a change of judge was filed on June 7, 1978. While the motion was drafted by Lock personally, his signature and that of his trial counsel appear at the end of the document. The motion specifically requested that a hearing be held on the date scheduled for the pretrial conference, June 16. The trial court granted the request for a hearing and scheduled the hearing for the date and time requested by appellant.

Appellant argues that several incidents reveal the trial court's alleged bias and prejudice against him. First, he claims the judge "participated in" the revocation of prison privileges he had previously enjoyed. However, the record reveals that appellant was informed of this revocation by a letter from a prison official. This letter makes it clear that the revocation was the act of prison officials in accordance with prison policy. While the letter does indicate that the judge who had previously requested these privileges for Lock had concurred in their revocation, this actually refers to Judge Chipman, who was not the judge appellant wished to remove from his case. Thus, the revocation of appellant's prison

privileges by prison officials does not show bias and prejudice on the part of this trial judge.

■ Lock alleges the judge's prejudice toward him is also reflected in the court's response to his *pro se* motions. According to Lock's testimony at this hearing, several *pro se* motions he submitted relating to this case were not filed by the court, but were transmitted to Lock's trial counsel. As we explained in Issue II, *supra,* appellant Lock had no right to have these motions accepted. He was represented by an attorney at the time, and had not indicated that he wished to proceed *pro se.* Appellant maintains the judge's action in this regard prevented him from using the hybrid form of representation he had been allowed to use previously. However, this was purely a matter for the trial court's discretion. *Bradberry v. State, supra.* Appellant's efforts to conduct a hybrid defense had previously caused confusion with regard to the change of venue from Allen County. *See* Issue II, *supra.* We think the court acted wisely in transferring the *pro se* motions to trial counsel, so that Lock and his counsel would each be aware of what the other was doing.

Appellant Lock also alleges the trial court "took no action to protect the defendant's life while still in custody despite a request." This, he says, also shows the judge was prejudiced against him. This claim is also without merit. Apparently Lock also requested additional protection from prison officials. He was informed by prison officials that he was being afforded the maximum protection available. This was properly a matter of prison administration, and appellant does not indicate what the court reasonably could have been expected to do in response to appellant's request for protection.

■ During the hearing on appellant's motion for a change of judge, defense counsel requested a ten-day continuance, so that he might bring in prison officials to testify. The court refused to grant the continuance. Appellant now argues this ruling was fur-

ther evidence of the judge's bias and prejudice. Even assuming the prison officials could have provided relevant evidence on the matter in question, we do not believe the court's refusal to grant a ten-day continuance shows bias and prejudice. Appellant claims he had only one day's notice of the hearing and was therefore unable to obtain the witnesses' presence at the hearing. This argument overlooks the fact that Lock and his counsel requested this hearing date. Counsel knew at the time the motion was filed what his evidence on this issue would be. Even though counsel received notice of the hearing only one day in advance, we can perceive no reason why counsel could not have anticipated that the witnesses would be needed on the day *he* suggested. Furthermore, there is no showing that these witnesses could not have been present on only one day's notice. At the time the court set this matter for hearing, the case was set for trial on July 6. A ten-day continuance would have set this hearing back to June 26, and likely would have required another change of the trial date. As we noted earlier in this opinion, due to various delays, some explained and some unexplained, the trial of this cause did not take place until four and one-half years after the crime was committed. We think the court was justified, under the facts of this case, in refusing to delay the proceedings any further, and we do not believe his denial of the request for a continuance shows bias and prejudice toward Lock. *See Aron v. State,* (1979) Ind., 393 N.E.2d 157.

At the conclusion of the hearing on Lock's motion for a change of judge, defense counsel requested that the trial court issue an order concerning defendant's access to a typewriter, dictation machine and paper while in custody in the Marion County Jail. The record reveals that, at some point prior to this hearing, counsel had requested that Lock be transferred to the jail in Marion County. Apparently the Marion County Sheriff had agreed to the transfer. The trial court pointed out that he had no authority to order the transfer, and that any arrangements for access to equipment and legal materials would be the concern of the Marion County Sheriff. The court further stated:

"I have no authority to order [the sheriff] to accept him. Therefore, I leave it totally to you. If he wants them to take the prisoner, which the letter you have given me says, we will take him and if he wants to set him up in an apartment, I suppose that will be up to the sheriff. But I am leaving it up to you and your sheriff in Marion County as to how your defendant is treated in Marion County."

Record at 1490. Appellant then moved for a mistrial.

 Appellant Lock now claims this remark about setting him up in an apartment showed a "callous" attitude in the judge toward appellant's exercise of his "right" to act as co-counsel and participate in his defense. However, taken in context, this remark reveals that the trial court had correctly determined that appellant had no such "right" to act as co-counsel, and that this matter should be left for the defendant and counsel to resolve with the Marion County Sheriff. We do not believe appellant had shown that the trial judge had a "callous" attitude toward him or was biased or prejudiced against him. The trial court, therefore, did not err in overruling appellant's motion for a change of judge.

## X.

 The trial court sentenced appellant "to serve a term of the defendant's natural life." Record at 200. Appellant now claims the statute, Ind.Code § 35–13–4–1 (Burns 1975), provides for a sentence of "life," not "natural life." He argues that the use of the term "natural life" would cause the Clemency Commission to believe that Lock should never be granted clemency. Appellant does not explain how "natural life" is different from "life," nor how these terms could be construed to mean different things. This is pure speculation, and the issue is utterly without merit. *See Mott v. State,* Ind., 402 N.E.2d 986 (1980); *Marsh v. State,* (1979) Ind., 393 N.E.2d 757, 763.

## XI.

Appellant Lock next objects to several of the instructions given by the court. Preliminary Instruction 10 and Final Instruction 9 dealt with the concept of "reasonable doubt." Appellant alleges these instructions effectively minimized the State's burden of proof. However, we think these instructions, when read in their entirety, correctly instructed the jury on the meaning of "reasonable doubt," and we find no error in the giving of these instructions. *See generally Henderson v. State*, (1979) Ind., 395 N.E.2d 224, 228; *Porter v. State*, (1979) Ind., 391 N.E.2d 801, 814.

[27] Lock alleges his Tendered Instruction 10(A) should have been given by the court. However, the substance of this instruction was also found in appellant's Tendered Instruction 8(A), which was given by the court. As we stated in *Smith v. State*, (1979) Ind., 388 N.E.2d 484, 487: "The trial court commits no error when it refuses to give a tendered instruction which . . . is adequately covered by other instructions." *See Lynn v. State*, (1979) Ind., 392 N.E.2d 449.

Appellant also argues the court erred in giving Final Instructions 13 and 15. These instructions used the term "criminally responsible" in discussing the question of insanity. Appellant asserts that the term "legally sane" should have been used instead. However, Final Instruction 19 explains that insanity is equivalent to a lack of criminal responsibility. Further, *Hill v. State*, (1969) 252 Ind. 601, 251 N.E.2d 429, adopted the phrase "not responsible for criminal conduct." Thus, these instructions correctly stated the law and did not mislead the jury.

Lock next argues that his Tendered Final Instructions 5 and 6 should have been given by the court. These instructions dealt with the definition of insanity and the State's burden of proof with respect thereto. We note that the concepts covered by these instructions were adequately explained in the instructions given by the court, including Final Instructions 13, 15 and 19. Therefore, the court did not err in refusing to give these tendered instructions. *Lynn v. State, supra.*

Appellant also claims the court erred in giving Final Instruction 19. He argues this instruction impermissibly shifted the burden of proof on the insanity issue. Final Instruction 19, however, states the legal definition of criminal responsibility, and is not directly concerned with the burden of proof on the insanity issue. In addition, Final Instruction 10 adequately instructed the jury on the State's burden of proof on "each and every material allegation." The court did not err in giving Final Instruction 19.

Finally, appellant Lock argues the court erred in giving Final Instruction 20. The portion of the instruction to which he objects states:

"The terms 'mental disease or defect' do not include an abnormality manifested only by repeated criminal or otherwise antisocial conduct."

Record at 150. Appellant acknowledges that this sentence correctly states the law, but he claims it was not applicable to the facts of this case. However, there was a great deal of evidence presented regarding appellant's prior criminal or "antisocial" conduct. Appellant asserts the psychiatric evidence showed other indicia of a mental disease or defect besides criminal conduct. Accepting this assertion as true, this instruction does not preclude a finding of a mental disease or defect based on those other indicia. Instruction 20 says only that criminal or antisocial conduct do not, *by themselves*, manifest a mental disease or defect. The court did not err in giving this instruction.

## XII.

Appellant Lock next argues the trial court committed error when it failed, on the jury's request, to give an additional instruction during deliberations. The record reveals that a request was submitted to the court five minutes after the case was given to the jury. This request indicated the jury wished to hear the "court's definition of the

word 'perpetration.' " The State objected to any further instructions, and the court refused to instruct the jury on the meaning of this word.

▮▮▮ Appellant was charged with first degree murder. The information alleged that he killed Nena Wallis during the "perpetration" of a felony. This word appeared in Preliminary Instructions 4 and 5, and Final Instructions 2, 4 and 13. Preliminary Instruction 4 and Final Instruction 2 recited the charging information. Preliminary Instruction 5 and Final Instruction 4 instructed the jury as follows:

> "Ladies and Gentlemen, on February 20, 1974, there was a statute of the State of Indiana reading as follows:
>
> 'Whoever kills a human being while perpetrating or attempting to perpetrate a rape, is guilty of murder in the first degree.' "

Record at 111, 134. Final Instruction 13 states:

> "You are instructed that to obtain a conviction on Count I of the information, the State must prove beyond a reasonable doubt:
>
> (1) That the defendant Donald Allen Lock, killed Nena Wallis,
>
> (2) while perpetrating a rape,
>
> (3) on or about February 20, 1974, in Allen County, Indiana, and
>
> (4) that at the time of the commission of the crime, the defendant was criminally responsible for his acts."

Record at 144. Appellant now argues that a "perpetration" was one of the elements of the offense of first degree murder, and, therefore, that the trial court erred in failing to define this word for the jury. In support of this argument, appellant cites Ind.Code § 34-1-21-6 (Burns 1973), which states:

> "Further instructions.—After the jury have [sic] retired for deliberations, if there is a disagreement between [sic] them as to any part of the testimony, or if they desire to be informed as to any point of law arising in the case, they may request the officer to conduct them into court, where the information required shall be given in the presence of, or after notice to, the parties or their attorneys."

▮▮▮ We do not believe this statute controls this case. The statute refers to informing the jury as to a "point of law arising in the case." The definition of "perpetration" is not a "point of law," as appellant asserts. Rather, the term is one of common usage, used here in its ordinary meaning. Moreover, the record reveals that the jury requested the "court's definition" of "perpetration." This indicates the jury believed the word carried a special technical meaning. Because there was no special or legal definition to apply, the court prudently left the jury to rely upon its common sense understanding of the word in the context in which it was used. Whether to give an instruction including definitions was a matter for the trial court's discretion. *Coonan v. State, supra.*

Appellant asserts that the conflicting evidence presented on whether a rape actually occurred is a further indication of the jury's confusion and the harm that resulted from the court's failure to define "perpetration." However, even though the evidence on this point was conflicting, we fail to see, considering all of the instructions in which this word was used, how this fact could have caused any erroneous interpretation of the word "perpetration." We think the trial court wisely allowed the jury to apply a common sense definition to this term.

### XIII.

Finally, appellant Lock challenges the sufficiency of the evidence. He makes two arguments in support of this issue. First, he contends the evidence was insufficient to show that he raped the decedent Nena Wallis. Appellant was charged with felony murder; it was therefore necessary for the State to prove beyond a reasonable doubt that he raped the decedent. Second, he claims the State did not prove he was sane at the time the crime was committed.

▮▮▮ In determining whether the evidence is sufficient to sustain the verdict, this Court will not reweigh the evidence nor

examine the credibility of witnesses. Rather, we will determine only if there is substantial evidence of probative value to establish every element of the crime beyond a reasonable doubt. *Taggart v. State*, (1979) Ind., 390 N.E.2d 657, 659; *Ruetz v. State*, (1978) Ind., 373 N.E.2d 152, 156. These principles also hold true in examining the sufficiency of the evidence on the insanity issue. *Lynn v. State*, (1979) Ind., 392 N.E.2d 449, 452; *Ruetz v. State, supra*.

Concerning the rape issue, appellant Lock emphasizes that the testimony revealed that pubic hairs of the assailant are commonly found on a rape victim, and that the victim's genitals quite often show signs of trauma after the incident. In this case, however, a comparison of hair samples indicated none of appellant's pubic hair was found on Nena Wallis' body. Further, the autopsy performed on Nena Wallis revealed no evidence of trauma to her genitals. In addition, appellant points out that he made several out-of-court statements in which he denied raping Nena Wallis.

However, in examining, as we must, the evidence most favorable to the State, we find that appellant made out-of-court statements to several persons acknowledging that he raped Nena Wallis. Also, Lock testified at trial that he ejaculated as he stabbed the victim. The pathologist who supervised the autopsy testified that sperm was found in the victim's mouth and vagina, but was not discovered anywhere else. The evidence established that the victim had oral and genital sex soon before her death. Thus, we think there was sufficient evidence from which the jury could have found beyond a reasonable doubt that appellant Lock raped Nena Wallis.

The insanity question also required the jury's resolution of conflicting evidence. As we noted above, we will not second-guess the jury and reweigh the evidence. The jury may accept or reject the testimony of witnesses, including expert witnesses. *Sypniewski v. State*, (1977) 267 Ind. 224, 232, 368 N.E.2d 1359, 1364. In this case, three psychiatrists and one physician concluded appellant Lock was sane when he committed this crime. There was a great deal of evidence presented on this question, including extensive testimony from appellant himself. We think the evidence is sufficient to support the jury's finding of sanity, and we will not disturb the verdict.

Finding no reversible error, we affirm the judgment of the trial court.

All Justices concur.