Sherry Lynn JOHANSEN, Appellant
(Defendant Below),

v.

STATE of Indiana, Appellee
(Plaintiff Below).

No. 484S131.

Supreme Court of Indiana.

Nov. 20, 1986.

Daniel L. Bella, Appellate Public Defender's Office, Crown Point, for appellant.

Linley E. Pearson, Atty. Gen., Joseph N. Stevenson, Deputy Atty. Gen., Indianapolis, for appellee.

PIVARNIK, Judge.

Defendant-Appellant, Sherry Lynn Johansen, was convicted by a Lake Superior Court jury of murder, a class A felony. The trial court sentenced her to fifty (50) years imprisonment. On this direct appeal, Appellant presents the following issues for our review:

1) admission of Appellant's confession;

2) denial of Appellant's motion for a mistrial;

3) admission of evidence of threats made by Appellant; and,

4) whether there was sufficient evidence to support Appellant's conviction.

The facts most favorable to the State are as follows. On May 24, 1982, Appellant arrived at the emergency room of St. Margaret's Hospital in Hammond, Indiana. She was carrying her three (3) year old child, Vicky Edwards. Doctors attempted to revive the child, but she died about fifteen minutes after having been brought into the emergency room. Officer Hedinger of the Hammond Police Department observed that the child was bruised and burned on several places on her body. Hedinger suspected child abuse and started an investigation of the circumstances surrounding the child's death.

When questioned at the hospital, Appellant informed police that she had left the child with her live-in boyfriend, Karlos Miller, at 1:00 p.m. that day. When she returned at 4:30 p.m., she found the child on a bed and was unable to wake her. Appellant told the police that Karlos Miller was

responsible for the child's injuries and death. Miller thereafter was arrested. The police asked Appellant to come to the police station and give them a statement. Appellant agreed.

Appellant first gave a three page statement to the police implicating Karlos Miller in the child's death. She was not read her *Miranda* rights prior to giving this statement. After the first statement was given, Appellant was asked to read the statement and sign it. After she did this, she stated to the police, "I better tell you all of the truth." An officer asked her what she meant by that, and she responded, "I did this with Karlos." At that point, the police interrupted the interview and read Appellant her rights. She then signed a waiver form. The police started to question her again and she gave them a one page statement indicating she was also responsible for her daughter's injuries.

### I

Appellant's first contention is that the trial court erred in admitting her confession because it was not voluntarily given. She claims that because she was emotionally upset, and did not receive her *Miranda* warnings before she gave her first statement, she did not give her statements voluntarily. We do not agree.

■ *Miranda* warnings do not need to be given when the person questioned has not been placed in custody. *Hatcher v. State* (1980), 274 Ind. 230, 231, 410 N.E.2d 1187, 1188. Further, *Miranda* does not apply beyond coercive custodial interrogation, or when a person volunteers a statement not in response to interrogation. *Hill v. State* (1984), Ind., 470 N.E.2d 1332, 1335. In this case, Appellant was taken to the police station to give a statement implicating her boyfriend in the crime. Officer Murray, who took the statement, testified at the suppression hearing that at this point in his investigation, Appellant was in no way a suspect in the child's death. Murray stated he was taking Appellant's statement only to use as evidence against Appellant's boyfriend. Since Appellant was not

a suspect at this time, and was not being interrogated, there was no need for the police to give her the *Miranda* warnings before taking her statement. It was not until Appellant stated, "I better tell you all the truth," that the police became suspicious of her involvement in the crime. At this point, the police stopped their questioning, read Appellant her *Miranda* warnings, and asked her to sign a waiver form. She agreed and then gave a second statement implicating herself in her child's death.

■ The question of the admissibility of this second statement is determined by whether, based on the totality of the circumstances, it was made voluntarily. The circumstances to be considered include whether the confession was freely self determined, the product of a rational intellect and freewill, without compulsion or inducement of any sort. *Murphy v. State* (1977), 267 Ind. 184, 190, 369 N.E.2d 411, 415 *reh. denied.* The State has the burden of showing beyond a reasonable doubt that the defendant voluntarily and intelligently waived her rights. *Chandler v. State* (1981), 275 Ind. 624, 419 N.E.2d 142, 147. In reviewing the admissibility of an incriminating statement, this Court examines only the evidence and reasonable inferences therefrom which are favorable to the trial court's ruling, together with any uncontradicting adverse evidence, and if, from that viewpoint, there is substantial evidence to support the trial court's ruling, it will not be disturbed. *Killion v. State* (1984), Ind., 464 N.E.2d 920, 922. The evidence here clearly supports the trial court's ruling that Appellant's statement was admissible. Appellant was read her *Miranda* rights before giving the incriminating statement. She indicated she understood her rights and signed a waiver form. Officer Murray testified at the suppression hearing that Appellant asked no questions concerning her rights, and continued to talk with him without any reluctance. Based on these facts, we find that the trial court correctly allowed Appellant's incriminating statement to come into evidence.

## II

At trial, the State called Appellant's former husband, Don Robertson. The trial court allowed him to testify, over Appellant's continuing objection, about an incident which happened eight years earlier involving Appellant and their young child, Yvonne Fay. Robertson testified that Appellant asked Yvonne to pick up a bag full of clothes and take it to the kitchen. The bag was too heavy for Yvonne to lift. Robertson stated that Appellant picked up a broom and jabbed the bristle end at the girl's face, tormenting her until she began crying. Robertson then testified that Appellant began to laugh about the whole incident. The trial court allowed this testimony to come in, but after the witness stepped down, the court reconsidered its ruling and reversed its decision. The court informed the jury of its decision, struck Robertson's testimony from the record, admonished the jury to disregard it because it was too remote in time, and then polled the jury as to whether they could disregard Robertson's testimony. All the jurors answered that they could. Appellant moved for a mistrial which the trial court denied. Appellant now claims that the trial court abused its discretion in denying her motion.

■ The granting of a mistrial lies within the sound discretion of the trial court, and its determination will be reversed only where an abuse of discretion can be established. *Wallace v. State* (1985), Ind., 486 N.E.2d 445, 457, *reh. denied* (1986), *cert. denied* — U.S. ——, 106 S.Ct. 3311, 92 L.Ed.2d 723. In order to establish an abuse of discretion, Appellant must show us she was placed in a position of grave peril to which she should not have been subjected. *Morgan v. State* (1981), 275 Ind. 666, 419 N.E.2d 964, 967. The trial court's admonishment to a jury is presumed to cure any error absent a showing to the contrary. *Edwards v. State* (1984), Ind., 466 N.E.2d 452, 455; *French v. State* (1977), 266 Ind. 276, 283–84, 362 N.E.2d 834, 839, *reh. denied.*

■ The State argues with some merit that Robertson's testimony was in fact admissible since the defendant had entered a special plea of not guilty by reason of insanity, which opened the door to her actions and attitudes during this period. *Lock v. State* (1980), 273 Ind. 315, 322, 403 N.E.2d 1360, 1366. The State further claims the evidence was admissible to show Appellant's intent. *Kalady v. State* (1984), Ind., 462 N.E.2d 1299, 1304. The trial court, in striking the testimony, did not find it was inadmissible on its merits, but rather found it was so remote in time that he advised the jury not to consider it. The court adequately admonished the jury and was assured by them they would not consider the evidence. Further, there is not a showing of such great emotional weight to the issue to indicate the jurors were unable to follow their oaths by not considering this evidence in their deliberations after having been so admonished. We see no reversible error in this issue considering the strong direct evidence indicating the defendant's guilt.

## III

■ Appellant next argues that the trial court erred in allowing Appellant's mother to testify about a threat Appellant made toward the victim. Appellant's mother, Dorothy Williams, stated she heard Appellant say, "I'm going to go back and beat the little bitch up." Williams stated she heard this about one month before the victim died. She also stated she did not take the threat seriously at the time, and did not think anything would come of it. Appellant now claims that the trial court erred in allowing this testimony to come in because it was only a "generalized statement of intent," and had no probative value. We disagree. Evidence of threats toward a victim, made by the accused, are admissible in a homicide prosecution. *Romine v. State* (1983), Ind., 455 N.E.2d 911, 915; *Wells v. State* (1982), Ind., 441 N.E.2d 458, 466, *reh. denied* (1983). Evidence of threats is probative on the issue of intent. *Douglas v. State* (1984), Ind., 464 N.E.2d 318, 321. There was testimony in the record that many of the victim's injuries

were more than one month old. The evidence of the threat tends to prove intent, one of the elements of the crime of murder. Thus the evidence was relevant, and it was proper for the trial court to allow it into evidence. There is no error here.

### IV

Finally, Appellant argues there was insufficient evidence to support her conviction of murder. She claims there was insufficient evidence as to the cause of death, that she inflicted the fatal injuries, and that she possessed the necessary intent to kill. Appellant's arguments are unpersuasive.

In reviewing claims of insufficient evidence, this Court will neither weigh the evidence, nor judge the credibility of the witnesses. We look only to the evidence most favorable to the State and all reasonable inferences to be drawn therefrom. If there is substantial evidence of probative value from which the jury could make its findings beyond a reasonable doubt, the verdict will not be disturbed. *Bean v. State* (1984), Ind., 460 N.E.2d 936, 944; *Hubbard v. State* (1982), Ind., 437 N.E.2d 52, 55. Here, the evidence is sufficient.

 At trial, Dr. Custodio testified that the victim suffered from a lacerated spleen caused by blunt force trauma. He also found hemorrhaging of the right and left side of the child's brain. This too was caused by blunt force trauma. In his opinion, the cause of death was "multiple blunt force injuries." However, he could not pinpoint which injury was the exact cause of death. Dr. Pless took the stand and testified he found the same injuries as did Dr. Custodio. In addition, Dr. Pless found a fractured rib which was caused by a blow of substantial force. In his opinion, the cause of death was multiple blunt force injuries. Unable to pinpoint the blow which caused the death, Dr. Pless stated that all the injuries contributed to the death by causing both physical and emotional debilitation to the degree that she lost the will to live. He defined this as classic child abuse syndrome. It is evident from this testimony that the cause of death

was from Appellant's continued abuse of her child. Thus there is sufficient evidence as to the cause of death.

 Appellant next claims there was no evidence that she inflicted the injuries which caused the child's death. However, when a person acts as a confederate or accomplice of another, the acts of the accomplice will be imputed to that person. Where a person acts in concert with other participants in a crime, it is not necessary for the State to prove the defendant committed every act constituting the crime. *Bean,* 460 N.E.2d at 942. Here, Appellant's statement to the police indicated that she participated in the abuse of her child. She admitted holding her child down while her boyfriend beat and sexually abused the child. She also admitted to knocking the victim to the ground and then kicking her. Appellant stated this happened three or four times. Clearly this is sufficient evidence that Appellant participated in inflicting the injuries which caused her child's death.

 Finally, Appellant claims there was insufficient evidence to show she had the necessary element of intent to kill. However, it is well settled that one is presumed to have intended the reasonable result of his own acts. Further, the duration, brutality, and relative strengths of the defendant and victim are factors that can be considered by the jury as indications of the defendant's intent to kill. *Peters v. State* (1984), Ind., 470 N.E.2d 708, 712, *reh. denied* (1985). In this case, there was testimony by two doctors indicating that the victim's injuries were anywhere from several hours to several weeks old. The injuries were the result of brutal blunt force beatings, many times when the child was bound at the hands and feet. The victim was three (3) years old. Appellant was twenty-seven (27). It was well within the province of the jury to draw the inference of intent to kill from these facts. We find that the jury's verdict is clearly supported by sufficient evidence.

Finding no error as to any of Appellant's contentions, we affirm the trial court.

GIVAN, C.J., and DeBRULER, SHEPARD and DICKSON, JJ., concur.