James E. GIBSON, Appellant
(Defendant below),

v.

STATE of Indiana, Appellee
(Plaintiff below).

No. 82S00–8607–CR–00624.

Supreme Court of Indiana.

Nov. 13, 1987.

Terry A. White, Evansville, for appellant.

Linley E. Pearson, Atty. Gen., Michael Gene Worden, Deputy Atty. Gen., Indianapolis, for appellee.

PIVARNIK, Justice.

Defendant–Appellant James E. Gibson was convicted of Murder and Battery, a class B misdemeanor, as an included of-

fense of Child Molesting. The trial court found the aggravating circumstances outweighed the mitigating circumstance that Gibson had no prior record of violence. The aggravating circumstances included that the victim was a helpless two-year old child; Gibson admitted inflicting 20 blows to the head and body of the victim over a thirty-day period; Gibson admitted he knocked the victim against the door frame; and the victim died as a result of blows to the head. Gibson was sentenced to consecutive terms of fifty (50) years and six months, respectively.

Gibson here directly appeals, raising the following issues for our review: (1) admissibility of Gibson's incriminating statements, (2) whether jurors, who stated they would wonder why a defendant does not testify, should have been stricken for cause, (3) whether the victim's dying of a staph infection was an extraordinary intervening cause that relieves Gibson of responsibility for her death, (4) whether the evidence was sufficient to prove Gibson knowingly killed the victim, and (5) whether the evidence was sufficient to prove Gibson was guilty of battery.

Gibson began living with Julie Taylor and her two year old daughter, Jolie, in December of 1984. Gibson is not the child's natural father. He babysat with Jolie while her mother worked. Two weeks after the couple started living together, Ms. Taylor noticed bruises on her daughter. She noticed the child had a black eye when Gibson and Jolie picked her up from work one Saturday. When questioned as to what happened to Jolie, Gibson stated he had thrown her up in the air playing with her and accidentally dropped her. The next day, friends inquired about the bruising around the victim's eyes and Gibson told them a little boy had hit Jolie with a toy truck.

On the morning of January 24, while Ms. Taylor remained in bed, Gibson attempted to dress Jolie. She pulled away and Gibson shoved her. Jolie hit her head against the side of the coffee table. Ms. Taylor got up when she heard Jolie crying and found the child sitting on Gibson's knee on the living

room couch. Jolie passed in and out of consciousness, spoke a few words, and then passed out completely. Gibson and Ms. Taylor rushed Jolie to the hospital. Jolie entered the hospital in serious condition with head injuries which required brain surgery. In addition to her head injuries, Jolie's vaginal opening was larger than expected for a child her age and she had a bruise around her anal opening. Jolie died on February 10, 1985, of a staph infection she incurred while recovering from brain surgery.

When originally questioned about Jolie's condition, Gibson claimed she had been hurt by another child. Eventually, Gibson gave a statement to the police in which he admitted he had hit and kicked the child several times.

■ The State first points out that there has been no ruling on the Motion to Correct Errors and thus, this appeal should be dismissed. However, in the event a court fails to rule on a motion to correct error within forty-five days after filing, if no hearing is required, upon application of any interested party, the pending motion to correct error may be deemed denied. Ind.R. Tr.P. 53.3(A). Thus, we deem the Motion to Correct Errors denied.

■ A motion to correct errors must be filed within 60 days of sentencing. Ind.R. Tr.P. 59(C); Ind.R.Crim.P.R. 16. The Record of the Proceedings shows Gibson was sentenced on November 21, 1985. He filed his Motion to Correct Errors on January 21, 1986. Both the State and Gibson state that "Due to an intervening holiday, Gibson's Motion to Correct Errors was filed on the final day of the sixty day time period." Gibson filed his Amended Motion to Correct Errors on February 28, 1986. The State further argues the amended motion, on which Gibson bases his arguments, was a nullity because it was not timely filed. Amendments to a motion to correct errors may be filed before ruling. However, the trial judge has no jurisdiction to accept amendments after the 60 day time limit has elapsed. *Matter of Adoption of H.S.* (1985), Ind.App., 483 N.E.2d 777, 779–80.

■ Gibson asserts he raises no new issues in his Amended Motion to Correct Errors and that the amended motion does nothing more than augment and more particularly specify issues 1(a) and 1(h). We feel the preferred procedure in this case is to consider the case on its merits since the State did not object to the filing of the Amended Motion to Correct Errors at the time of its filing and has fully briefed the issues. Thus, so as not to defeat an otherwise meritorious appeal we address the issues as raised.

### I.

Gibson first asserts the trial court erred in admitting into evidence statements he made to the police. He claims he was under the influence of Valium at the time. He further asserts his statements were the result of coercion and undue influence because the police got eight to ten inches from his face, yelled and cursed at him during a three and one-half hour interrogation, and accused him of lying.

■ Admissibility of a statement is determined by whether, based on the totality of the circumstances, it was made voluntarily. The circumstances to be considered include whether the confession was freely self-determined, the product of a rational intellect and free will, without compulsion or inducement of any sort. *Johansen v. State* (1986), Ind., 499 N.E.2d 1128, 1130; *Murphy v. State* (1977), 267 Ind. 184, 190, 369 N.E.2d 411, 415. The State has the burden of showing beyond a reasonable doubt that the defendant voluntarily and intelligently waived his rights. *Johansen,* 499 N.E.2d at 1130. In reviewing the admissibility of an incriminating statement, this Court examines only the evidence and reasonable inferences therefrom which are favorable to the trial court's ruling, together with any uncontradicting adverse evidence, and if, from that viewpoint, there is substantial evidence to support the trial court's ruling, it will not be disturbed. *Id.*

■ The evidence here supports the trial court's ruling that Gibson's statements were admissible. Gibson asserts he

was under the influence of Valium when he made his statements which affected the voluntariness of those statements. When a defendant challenges the voluntariness of his statement based on his allegation that he was intoxicated when he made his statement, he has the burden to introduce evidence to establish that the amount and nature of the intoxicants would produce an involuntary statement. *Wiseheart v. State* (1986), Ind., 491 N.E.2d 985, 992. The only evidence presented that Gibson had taken any drugs was his testimony that he had taken Valium on January 24 and 25. Since Gibson did not take the drug in the presence of the officers, the officers could not have been aware of the drug usage unless it manifested itself by affecting Gibson's behavior. Detective Bumpus, however, testified that Gibson did not appear to be intoxicated or under the influence of any drug. Thus, Gibson's evidence of drug usage at most presented a conflict that was insufficient to indicate that Gibson's drug consumption resulted in an involuntary statement.

■ Gibson argues further that his statements were coerced because detectives harassed and threatened him. Gibson testified that both Detective Bumpus and Detective Erk cursed him, that Detective Bumpus got close to his face and stated he was going to see that Gibson burned, and that he was afraid of both detectives.

The testimony of the two detectives, however, conflicts. At the first suppression hearing, the detectives testified that on January 25, Gibson was advised of his rights, signed a waiver, and was then questioned. Detective Erk provided Gibson with a soft drink. Both detectives testified that no threats or promises were made nor was Gibson physically touched. Gibson never requested an attorney, nor did he request the detectives to cease questioning. Detective Bumpus testified that at one point he informed Gibson that if the child died it was possible he might face the death penalty. Detective Bumpus also testified that he did yell at Gibson, that he was close to Gibson's face and that at one time he did use profanity and call Gibson a liar. Detec-

tive Erk observed that at the time Detective Bumpus cursed at Gibson, Gibson was calm and did not appear to be afraid of the officers. The detectives dispute Gibson's claim of three and one-half hours of yelling and cursing.

At trial, the testimony of the detectives was essentially the same regarding the circumstances surrounding the giving of Gibson's statements. Moreover, the rights waiver forms signed by Gibson were introduced into evidence. Detective Erk testified he believed Gibson wanted to confess but wanted the officers to push him because he was having trouble bringing it out on his own.

Thus, the trial court was justified in finding the evidence presented at trial showed that Gibson's incriminating statements were voluntary. Gibson claims the record is replete with abusive police interrogation and that he simply gave up after hours of grilling. However, there was ample evidence to indicate the detective's conduct did not overcome Gibson's free will. Gibson was fully cognizant of his rights, he was not physically abused or threatened, no promises were made, and Gibson appeared calm and unafraid. Therefore, the trial court properly admitted the statements.

## II.

■ Gibson next claims the trial court erred in refusing to strike for cause two potential jurors. The grant or denial of a challenge to a juror is within the discretion of the trial court. This Court will interfere only if the decision is illogical or arbitrary. *Woolston v. State* (1983), Ind., 453 N.E.2d 965, 967; *Morgan v. State* (1981), 275 Ind. 666, 670, 419 N.E.2d 964, 967. Reversible error occurs only when the error has prejudiced the defendant. *Woolston*, 453 N.E. 2d at 968.

Gibson claims two jurors should have been stricken for cause because they stated they would wonder why Gibson did not testify. The two potential jurors stated during *voir dire* that they would have some difficulty adhering to an instruction that the failure of an accused to testify cannot be considered by the jury. Gibson

challenged Mr. Pfiffer and Mrs. Goodman for cause, but the challenges were not permitted. At the time he made his challenges for cause, Gibson retained one peremptory challenge, which he then used to strike Mrs. Goodman.

Gibson has not shown how the alleged error prejudiced him. Mr. Pfiffer expressed a problem with the concept that a defendant does not have to testify. Mr. Pfiffer's concern was that he would wonder why the accused did not testify. Mrs. Goodman expressed a similar problem. Both individuals further stated, however, that they believed they could set aside their personal views and follow an instruction not to consider a defendant's failure to testify in reaching a verdict. This is all that is required of a juror. *Williams v. State* (1981), Ind., 426 N.E.2d 662, 669. "It is sufficient if the juror can lay aside his impression or opinion and render a verdict based on the evidence presented in Court." *Irvin v. Dowd* (1960), 366 U.S. 717, 81 S.Ct. 1639, 6 L.Ed.2d 751.

### III.

Gibson next disclaims responsibility for Jolie's death arguing that it was not the injuries he inflicted on her that caused her death, but rather, the infection she developed in the hospital following surgery. He alleges when less than .015% of hospital patients die of staph infection, then staph infection death is an extraordinary intervening cause making it unfair to hold him responsible for her death.

To break the chain of criminal responsibility, an intervening cause must be so extraordinary that it would be unfair to hold appellant responsible for the death. *Sims v. State* (1984), Ind., 466 N.E.2d 24, 26. Although it is uncommon for a patient to die of a staph infection, staph infection is a recognized complication of a head injury. Doctors testified that Jolie's staph infection was incurred during her hospital stay and was due in part to the medications required to treat the head injury which tended to lower resistance to other diseases. The staph infection was not ex-

traordinary as it was a recognized complication of the surgery and hospitalization.

The staph infection was a direct result of the surgery and hospitalization necessitated by the injuries Gibson inflicted on the child. Doctors testified that but for Jolie's head injury, she would not have required surgery and hospitalization nor incurred the staph infection and died. When one inflicts injury on another, he is deemed in the law to be guilty of homicide if the injury contributes mediately or immediately to the death of that other person. *Reed v. State* (1985), Ind., 479 N.E.2d 1248, 1252. Gibson caused the injury which led to the staph infection, and, therefore, is responsible for her death.

### IV.

Gibson next claims the evidence fails to establish he had the requisite culpability for a murder conviction. He argues the evidence does not show he was aware his acts would cause the child's death. Knowledge or intent may be inferred from the facts and circumstances of a case and it is within the province of the jury to draw an inference of knowledge or intent from the facts presented. *Burkhalter v. State* (1979), 272 Ind. 282, 287, 397 N.E.2d 596, 599.

The duration, brutality, and relative strengths of the defendant and victim are factors that can be considered by the jury as indications of the defendant's intent to kill. *Johansen,* 499 N.E.2d at 1132. The evidence, particularly Gibson's statement to the police on January 25, 1985, shows Gibson had hit and kicked Jolie numerous times prior to her hospitalization. The injuries left bruises on Jolie's head and face. Eventually, Gibson's conduct left Jolie's eyes terribly discolored and nearly swollen shut. Moreover, the victim was a small two year old girl. Gibson was a thirty year old male. The evidence shows Gibson hit and kicked the child when he was angry with her, particularly when he was frustrated with the child's crying. The jury could reasonably infer that whenever Gibson struck the child he did so intentionally. Moreover, considering the ob-

vious previous injuries to the child and that the injuries sustained by the child were serious enough to leave bruises and to require emergency surgery to save her life, the jury could reasonably infer Gibson was aware that the force he used to hit the child was sufficient to cause serious injury. Considering the disparity in size and age between Gibson and the victim, that the victim was in Gibson's care and was not a threat to Gibson, and that Gibson had struck Jolie before resulting in obvious injuries to the child, Gibson's continued infliction of injuries on the child evinces a conscious intent to seriously harm the victim. Thus, the jury could reasonably infer that Gibson struck Jolie with the requisite culpability to support his murder conviction.

### V.

Gibson argues the evidence of intent is insufficient to support his battery conviction. Battery was here included as a lesser included offense of child molesting. He does not claim battery may never be a lesser included offense of child molesting. He claims there is no evidence to support such a lesser-included offense.

While Jolie was hospitalized, the doctor found her vaginal opening was open more than expected for a child her age and she had a bruise around her anal opening. The doctor gave opinion testimony that the anal discoloration was due to an object having been placed in her anal opening and he believed that the larger than expected vaginal opening was consistent with digital penetration.

When first questioned by the police about whether he might have inserted part of his hand into Jolie's vagina or rectum, Gibson claimed if he did it was accidentally while he dried her off. He eventually admitted to having hit and kicked Jolie several times. Gibson also admitted to having hit Jolie with his fist in her pelvic area when he was angry with her. He also stated he had touched Jolie in her vagina and rectum to see if she was sore, because he had hit her in that area before. Gibson also said he had checked Jolie's vagina and rectum to be certain they were clean after the shower. This indicates an intentional touching. To support a battery conviction, it is sufficient to show an intentional or knowing touching in a rude, insolent or angry manner. Ind.Code Ann. § 35–42–2–1 (Burns Supp.1987). There was sufficient evidence here to support the verdict of the jury.

The judgment of the trial court is affirmed.

SHEPARD, C.J., and GIVAN, J., concur.

DeBRULER, J., concurs in result with opinion in which DICKSON, J., concurs.

DeBRULER, Justice, concurring in result.

The State bears the burden to prove the voluntariness of a confession when a hearing is held upon a motion to suppress a confession based upon a claim of involuntariness. The majority opinion accepts this principle, but limits it, relying upon *Wiseheart v. State* (1986), Ind., 491 N.E.2d 985, by placing a burden upon the defendant at such a hearing in the trial court to establish involuntariness due to drugs. I concurred in the *Wiseheart* opinion as well as its like predecessor, *Mulligan v. State* (1986), Ind., 487 N.E.2d 1309. I now find that I can no longer agree with this formulation, as it is contrary to the general constitutional principle that the State must establish voluntariness when that issue is raised and litigated as it was in this case.

DICKSON, J., concurs.