**Charles EVANS, Appellant,**

v.

**STATE of Indiana, Appellee.**

**No. 49S00–8704–CR–453.**

Supreme Court of Indiana.

Sept. 8, 1992.

Rehearing Denied Nov. 4, 1992.

---

**10.** As the statute stands today, he would be

timely. *See supra* note 3.

Theodore M. Sosin, Indianapolis, for appellant.

Linley E. Pearson, Atty. Gen., Arthur Thaddeus Perry, Deputy Atty. Gen., Indianapolis, for appellee.

## ON PETITION FOR REHEARING

DeBRULER, Justice.

Appellant Evans was convicted in a jury trial of five offenses, namely, confinement, two rapes, intentional murder and felony murder. In a second phase of the trial, the issues presented by a death sentence count were tried by jury and the jury recommended the death sentence. In a third phase of the trial, the capital sentencing hearing before the judge occurred. In a combined sentencing order, the trial judge ordered consecutive sentences of 20 years, 50 years, and 50 years for the three felonies and the death sentence for felony murder. No separate sentence for intentional murder was given. On appeal this Court affirmed the convictions and the sentences. *Evans v. State* (1990), Ind., 563 N.E.2d 1251. Thereafter a petition for rehearing was filed in this Court on behalf of appellant Evans. Such petition for rehearing is now granted for the purpose of reconsidering the propriety of the death sentence.

The capital part of the sentencing order of the trial court was based upon two aggravating circumstances and a single mitigating circumstance, as follows:

6. The State proved beyond a reasonable doubt the following aggravating circumstances with regard to Count IV, Felony Murder, to-wit: The Defendant ... did intentionally kill Darlene Hendrick by stabbing ... while committing rape ... and ... did intentionally kill Darlene Hendrick by stabbing ... while committing ... deviate conduct.

9. The Court finds it was a mitigating circumstance that defendant ... was imbibing alcoholic beverages at the time of the crime.

17. The Court finds that the aggravating circumstances ... in paragraph six ... outweigh the mitigating circumstances set out in paragraph nine ... and ... Charles G. Evans shall suffer the penalty of death for ... felony murder....

The gravamen of the offenses was that on October 3, 1985, appellant, age 26, met the victim, Darlene Hendrick, age 20, at a bus stop in downtown Indianapolis. They bought whiskey and drank it in an abandoned building, where appellant raped her at knife point. They proceeded to a bar together and then returned to the building where appellant forced her to perform oral sex and again raped her. He then stabbed her 45 times, killing her. He then removed small items from her purse, cut her hair, and applied lipstick to her. He pulled her body from the building. He then went to a nearby phone booth, where he called the police and awaited their arrival. He thereafter gave a full confession, and later testi-

fied during the sentencing phase before the jury at which time he admitted each criminal act and described his state of mind at the time of the acts.

At the first phase of the trial the defense was insanity. Psychiatric testimony was heard. At the sentencing phase before the jury many witnesses, including one psychiatrist, testified for the defense and many medical and police records were introduced. A complex and detailed chronicle of appellant's background from birth was presented. The state rested upon the evidence given at the first phase, which was incorporated at both sentencing phases.

 Appellant's physical development and make-up bear upon the propriety of the sentence. Appellant is a black male of small stature, 5 ft. 4 inches tall, and weighing 120 lbs. He was born 4–14–59, in a premature birth. His testicles did not descend into their normal position in the scrotum, and his father absolutely refused to permit him to have a simple operation to remedy this condition. At age 15, after his father had died, and after being referred to a community mental health facility by school authorities, his mother permitted the operation to be performed. Through the age of 15 appellant was subjected to constant ridicule. The injury from this ridicule was a major factor in producing appellant's psychiatric disorder and is the product of parental neglect. The psychiatrist witnesses, while finding no psychosis, uniformly diagnosed the resulting disorder and its bearing upon appellant's behavior. The sentencing court was in error in failing to accord this background mitigating value in the death sentencing process. It is entitled to substantial weight.

Having no history of juvenile arrests, made to leave the family home by his mother, and after being discharged from the military because of unsuitability, appellant developed at age 18 a bizarre pattern of public conduct as a means of dealing with his psychiatric disorder. Having no home, unable to maintain a job, in a filthy and disheveled state and under the influence of alcohol and drugs, he began to repeatedly show up at the police station and demand to be arrested so as to prevent him from carrying out a desire to hurt others. On one occasion he followed a police woman into the stationhouse and declared he wanted to rape her. He was often thrown out and on other occasions he was arrested and spent several days in the city psychiatric ward. Occasionally, if rejected, he would break a window or steal a small item and bring it with him in order to achieve his arrest. During one period, while under arrest and undergoing hospitalization, a psychiatrist made a diagnosis of possible schizophrenia when appellant revealed that he heard voices telling him to do things and that he felt at times that the TV talked directly to him.

In 1980 he was convicted of assaulting a woman in the federal courthouse. He grabbed a woman's hand as she left a restroom. She pulled away and went to call a guard. Within minutes he followed another woman into the restroom and grabbed her. She screamed and pulled away. He was immediately arrested. On receiving a three month sentence, he was referred by the court for psychiatric evaluation. A federal psychiatrist noted suicidal ideation, low intelligence, limited fund of information, insight nil, judgment poor, abuse of alcohol with drug usage, and concluded with an overall diagnosis of adjustment disorder to adult life.

In 1982 appellant was convicted of burglary and attempted child molesting. He was found guilty upon a plea of insanity and received 6 and 2 year terms, concurrent with an order for evaluation by The Department of mental health. He entered a window of a private residence and entered the bedroom of an 11 year old girl. As he touched her she woke up and called her mother. He told the mother that he wanted to rape the girl. The mother called her brother and the police, and appellant remained seated in living room and did not try to leave pending their arrival. According to the mother, he was crying, speaking a kind of gibberish, and incoherent. He was not belligerent or violent and was cooperative. He was arrested in the home. While imprisoned appellant slashed his

forearms in order to punish himself for drinking and committing this offense.

Dr. Bartell, a psychiatrist testifying for the defense at the sentencing hearing, did not agree with the 1982 federal diagnosis of adjustment disorder to adult life, and believed appellant's long history required a diagnosis of personality disorder. He found an impairment of function. Drs. Hull and Schuster, who testified on the defense of insanity, while finding no psychosis or mental illness as a reason to "excuse" criminal conduct, also diagnosed appellant as having anti-social personality disorder.

Pursuant to I.C. 35–50–2–9(c)(8), appropriate circumstances not enumerated may be considered and given mitigating value in the death sentence process. Appellant's psychiatric disorder at the time of the crime does not qualify under one of the specifically enumerated mitigating categories. However, because of its long-standing existence, its limitation upon functioning, and its well documented existence, it cannot rationally be rejected in the death sentencing process. Appellant's personality disorder was operative at the time of this crime. It must be accorded some mitigating weight. The trial court was in error in failing to do so.

As pointed out above, the case for the prosecution showed that immediately after the crime appellant turned himself in to the police. He then freely confessed and later testified and described the horrendous character of the onslaught upon the victim. By immediately reporting his own crime, he effectively removed himself as a dangerous threat to the community. This conduct is entitled to substantial mitigating weight in the process of determining whether the death penalty should be given, and was not.

The trial court's findings with respect to the existence of the aggravating circumstances are clearly supported by the record. Because the killing was accompanied by additional sexual assaults, it has great weight as an aggravator. However, when the written finding with respect to the existence of a lone mitigating circumstance of having consumed alcohol is re-

viewed along with the uncontroverted evidence of parental neglect, abnormal behavior, psychiatric disorder, and of the immediate surrender to authorities, it is clear that the trial court's conclusion that the death penalty is appropriate was arrived at without the required discrete and individualized consideration of the character of the offender. *Vandiver v. State* (1985), Ind., 480 N.E.2d 910. Having so concluded, and having given due consideration to the recommendation of the jury, we find that while the weight of aggravating circumstances is in the high range, it does not preponderate, and the sentence of death is therefore not appropriate in this case.

The sentence of the trial court imposing death is reversed. The cause is remanded to the trial court to set aside the sentence of death for felony murder and to impose in its stead a sentence of sixty years. All convictions and the other felony sentences and related sentencing orders totaling 120 years, are otherwise affirmed.

SHEPARD, C.J., and KRAHULIK, J., concur.

GIVAN and DICKSON, JJ., dissent.