Jay C. BEASON, Appellant
(Defendant below),

v.

STATE of Indiana, Appellee
(Plaintiff below).

No. 46S00–9603–CR–253.

Supreme Court of Indiana.

Jan. 13, 1998.

James Cupp, LaPorte County Deputy Public Defender, Michigan City, for Appellant.

Jeffrey A. Modisett, Attorney General, Arthur Thaddeus Perry, Deputy Attorney General, Indianapolis, for Appellee.

SULLIVAN, Justice.

On May 11, 1995, defendant Jay C. Beason pled guilty[1] to two counts of Murder, a class A felony,[2] and one count of Burglary, a class B felony.[3] The LaPorte Circuit Court sentenced defendant to two consecutive 60 year terms on the murder counts, and a concurrent 20 year term on the burglary count, for an aggregate sentence of 120 years. Defendant now appeals his sentence. We have jurisdiction over this direct appeal because

the longest single sentence exceeds 50 years. Ind. Const. art. VII, § 4; Ind.Appellate Rule 4(A)(7).

### Background

On July 24, 1994, defendant broke into the apartment of his ex-wife, Tricia Bishop, and found her and Derek Oshinski asleep in the bedroom. Defendant woke Derek and shot him three times, firing one bullet into Derek's left temple from within eighteen inches. Derek died immediately from the wound caused by that bullet. Tricia got up from the bed and fell against a wall, where defendant also shot her several times. Tricia did not die immediately, but was pronounced brain dead on July 29, 1994.

### Discussion

#### I

Defendant challenges the jurisdiction of the LaPorte Circuit Court over the charges against him. On July 25, 1994, the State filed in the LaPorte Superior Court No. 1 an information charging defendant with Murder, a class A felony, Attempted Murder, a class A felony,[4] and Burglary, a class B felony. Defendant pled not guilty to these charges on July 28, 1994. On August 18, 1994, the State filed an affidavit under Ind.Code § 33–5–31.1–9 (1993) (the "Transfer Statute")[5] in Superior Court No.1 to transfer to the LaPorte Circuit Court. In its affidavit, the State alleged as grounds for transfer (1) its intent to seek the death penalty against defendant; (2) the overloaded docket of Superior Court No. 1; and (3) the pendency of two other death penalty cases in circuit court.

Defendant filed a motion in opposition to the transfer on August 19, 1994, which the

---

1. Defendant pled guilty pursuant to an agreement under which the State agreed to dismiss the death penalty charges against him.

2. Ind.Code § 35–42–1–1 (1993).

3. Ind.Code § 35–43–2–1 (1993).

4. Ind.Code § 35–41–5–1 (1993).

5. Ind.Code § 33–5–31.1–9 provides in relevant part:

> The judge of the LaPorte circuit court may, with the consent of the judge of the receiving court, transfer any action or proceeding from the circuit court to any of the courts. The judge of any of the courts may, with consent of the judge of the circuit or another superior court, transfer any action or proceeding from the court to the circuit court or to another superior court.

Superior Court No. 1 denied; defendant's case was transferred to circuit court that day. On August 24, 1994, the State amended the charges against defendant in circuit court to include a death penalty request. The following day, defendant sought certification of an interlocutory order to appeal the transfer of his cause of action; the circuit court denied certification on September 7, 1994.

Defendant argues that the transfer of his cause from LaPorte Superior Court No.1 to LaPorte Circuit Court was invalid, and that the LaPorte Circuit Court therefore lacked jurisdiction. He contends that the State should have, but did not comply with Ind. Crim. Rule 12 (governing changes of judge in criminal cases).[6] The State responds that Crim.R. 12 does not apply to transfers initiated under the Transfer Statute. The State also maintains that defendant waived his right to object to any pre-trial rulings, such as this transfer of the cause of action, when he entered a plea of guilty.

■ We first address the issue of waiver in this context. The State cites to *Ford v. State*, 618 N.E.2d 36 (Ind.Ct.App.1993), *reh'g denied, trans. denied*, in which the Court of Appeals held that a defendant who pled guilty at trial waived his right to challenge certain pre-trial rulings for the first time at his hearing for post-conviction relief. Here, defendant sought to preserve this jurisdictional issue by filing a motion in opposition to the State's affidavit to transfer and by seeking an interlocutory order to appeal the

transfer. Furthermore, defendant raised this issue at the first opportunity presented on direct appeal. For these reasons, we cannot agree with the State that defendant waived his right to challenge the transfer of this cause.

■ We turn therefore to the applicability of the Transfer Statute and Crim.R. 12 to the issue at hand. The Transfer Statute permits a case to be transferred from one LaPorte County court to another, subject to the consent of both courts. In *Lock v. State*, we found that a similar transfer (from Marshall Circuit Court to Marshall Superior Court) initiated by a prosecutor under an analogous statute [7] was neither a change of venue from the county nor a change of judge and that the procedural requirements for a change of judge did not apply. *Lock v. State*, 273 Ind. 315, 318, 403 N.E.2d 1360, 1364 (1984). We reasoned in *Lock* that, although the prosecutor initiated the transfer, the circuit court had discretion to grant or deny the motion, and because the case was transferred between courts of equal jurisdiction, the defendant suffered no harm or prejudice.[8] *Id.* Based on our holding in *Lock*, we find that the transfer here initiated under Ind.Code § 33–5–31.1–9 was neither a change of judge nor a change of venue, and is not subject to Crim.R. 12.[9]

## II

Defendant next argues that his 120 year sentence is improper in four respects: (a)

6. "An application for a change of judge ... shall be filed within 10 (ten) days after a plea of not guilty.... If the applicant first obtains knowledge of the cause for change of venue from the judge ... after the time above limited, the applicant may file the application, ... [alleging] why such cause could not have been discovered before by the exercise of due diligence." Ind.Crim. Rule 12(D)(1) & (2).

7. *Ind.Code Ann.* § 33–5–35.5–16 (Michie 1975).

8. Following the transfer from circuit to superior court, a special judge was appointed to sit in the cause, thus remedying any potential prejudice resulting from the transfer.

9. We make two additional notes in this regard.

First, effective July 1, 1995, we adopted a rule requiring the non-discretionary assignment of all felony and misdemeanor cases. Ind.Crim.Rule

2.2. The steps taken by the prosecutor in this case do not violate the spirit of Crim.R. 2.2 because the transfer was subject to approval by both the transferor and transferee courts.

Second, in *Davenport v. State*, 1997 WL 795992 (Ind. Dec.23, 1997), we examined a situation where a trial court denied a prosecutor's motion to add three additional charges to an information four days prior to trial. The prosecutor dismissed the remaining charge and then filed a new information containing all four charges. The prosecutor then secured transfer of the case in a manner arguably analogous to the transfer at issue here. Defendant was subsequently convicted of all four charges. Finding an abuse of prosecutorial discretion, we reversed the convictions on the three additional charges. In contrast to *Davenport*, here we perceive no abuse of prosecutorial discretion; the prosecutor here used none of the powers or authority of that office to circumvent any court order or to prejudice the substantial rights of the defendant.

there was insufficient evidence to support the aggravating factors relied upon by the sentencing court; (b) the sentencing court failed to find mitigating factors supported by the record; (c) the court did not comply with the requirements of Ind.Code § 35–38–1–3 when imposing enhanced and consecutive sentences; and (d) the sentences imposed were manifestly unreasonable.

## A

In its sentencing statement, the court found the existence of four aggravating circumstances on which it relied to enhance defendant's sentence: (1) defendant recently had violated the terms of his probation;[10] (2) defendant was in need of correctional treatment best provided by commitment to a penal facility;[11] (3) defendant had a history of criminal and delinquent activity;[12] and (4) the particular circumstances of the crime were heinous. Defendant disputes the sufficiency of the evidence supporting these findings.

### A–1

■■■ The sentencing court first found that:

Defendant violated the conditions of probation when the crimes were committed. At the time of the commission of the burglarly and two murders, the Defendant was on probation as a result of a conviction on [ ] June 15, 1994. The Court also notes that on July 3, 1994, the Defendant engaged in conduct which resulted in an additional charge being filed against the Defendant.

(R. at 1361.)[13]

Defendant challenges this finding on jurisdictional grounds: Because the probation in question originated in LaPorte Superior Court No. 4, LaPorte Circuit Court lacked

jurisdiction to find that defendant had violated the terms of his probation. We find no merit in this argument. Allegations of prior criminal activity need not be reduced to conviction in order to be considered a proper aggravating factor. *Tunstill v. State*, 568 N.E.2d 539, 545 (Ind.1991) (prior arrests and pending charges not reduced to convictions properly considered as reflective of defendant's character and indicative of risk of future crime). Similarly, violations of the terms of probation need not be found to exist by the probation court before they can be considered as an aggravating circumstance by the sentencing court.

### A–2

■■ The second aggravating circumstance relied on by the sentencing court was that defendant was in need of correctional treatment best provided by commitment to a penal facility. In support of this finding, the court said:

The Defendant violated a court issued Restraining Order on two occasions, violated the rules of his probation, and engaged in conduct prior to the crimes involved, which were violations of his probation. The Defendant's actions display total disregard and disrespect for the law and an inability of the Defendant to control his anger and emotions.

(R. at 1361.)

Defendant claims this finding is inadequate because the court did not indicate that it had considered assigning penalties other than commitment to a penal facility in contravention of this Court's holding in *Newhart v. State*, 669 N.E.2d 953, 955 (Ind.1996).[14]

■■ When utilizing the "in need of correctional treatment" aggravating factor to support enhanced or consecutive sentences, the

---

**10.** Ind.Code § 35–38–1–7.1(b)(1) (1993).

**11.** Ind.Code § 35–38–1–7.1(b)(3) (1993).

**12.** Ind.Code § 35–38–1–7.1(b)(2) (1993).

**13.** Defendant was placed on probation following a conviction for resisting a law enforcement officer. The July 3, 1994, incident concerns defen-

dant's violation of a restraining order Tricia had issued against him.

**14.** In *Newhart*, we found that the trial court misapplied the "in need of correctional treatment" aggravating factor where it failed to consider punishments other than commitment to a penal facility. *Newhart v. State*, 669 N.E.2d 953, 955 (Ind.1996). *See also Mayberry v. State*, 670 N.E.2d 1262, 1270 (Ind.1996), *reh'g denied.*

sentencing court must articulate why this specific defendant requires corrective or rehabilitative treatment that could best be provided by commitment to a penal facility for a period of time in excess of the presumptive sentence. *Battles v. State*, 688 N.E.2d 1230, 1235–36 (Ind.1997); *Hollins v. State*, 679 N.E.2d 1305, 1308 (Ind.1997); *Mayberry v. State*, 670 N.E.2d 1262, 1270 (Ind.1996), *reh'g denied*. These crimes undeniably justified a lengthy period of incarceration, but there was no possibility that this defendant was not going to be committed to a penal facility. The court's findings do not demonstrate why this particular defendant requires correctional treatment in excess of the presumptive sentence.

However, a sentencing court is not limited in the matters it may consider when determining an appropriate sentence, Ind.Code § 35–38–1–7.1(d) (1993), and the facts set forth in justification of this aggravating circumstance themselves support enhancement of a presumptive sentence, namely defendant's violations of probation and the restraining order.[15] We conclude that the court properly considered them as additional grounds for imposing an enhanced sentence.

### A–3

■ Defendant next contends that the sentencing court misapplied the "history of prior criminal conduct" aggravating factor when it stated, "The Defendant has a history of criminal and delinquent activity. The Defendant's juvenile incidents and his criminal record as previously mentioned herein establish this aggravator." (R. at 1361.)

As defendant correctly notes, this Court has held that the sentencing court must recite the specific incidents comprising a defendant's criminal history if it relies in whole or in part on this aggravating factor to support

an enhanced sentence. *Battles*, 688 N.E.2d at 1234–35; *Jones v. State*, 675 N.E.2d 1084, 1087 (Ind.1996); *Hammons v. State*, 493 N.E.2d 1250, 1254 (Ind.1986), *reh'g denied*, 496 N.E.2d 1284 (Ind.1986). Here, the court's sentencing order contained references to defendant's prior criminal history, both adult and juvenile. The court noted defendant's probation violations as well as the charges pending from his violation of the restraining order, and made general reference to defendant's juvenile record. The sentencing order is adequate in this regard and supported by the record. The court recited enough specific incidents—including prior violations of probation and the restraining order—to indicate its awareness of defendant's criminal history.

### A–4

■ The fourth aggravating circumstance found to exist by the court was the heinous nature of these particular crimes. In its sentencing order, the court found that defendant "shot Tricia Bishop three times, one of the shots being in the head at point blank range." (R. at 1361.) Defendant argues that no credible evidence supports the "point blank range" finding, and the only evidence suggesting this finding is the forensic "homicide reconstruction" opinion of Michigan City Police Detective Ben Neitzel. Defendant claims that the reports of the surgeon who operated on Tricia's brain and the pathologist who performed Tricia's autopsy do not corroborate detective Neitzel's testimony. Defendant contends that his videotaped confession, in which he himself stated that he shot Tricia and Derek each three times, is the most reliable account of what happened during the murders, and that the confession does not support the court's point blank range finding.

**15.** Defendant also challenges as erroneous, in two respects, the court's finding that defendant violated a restraining order issued against him. First, defendant raises the same jurisdictional argument regarding the restraining order as he did for the probation violation finding in part II–A–1, *supra*, and we reject it on the same grounds. Second, he challenges the finding itself. The restraining order here in question was issued in temporary form on April 4, 1994, upon the motion of Tricia Bishop during her divorce from defendant, and was made permanent on April 11,

1994. The sentencing court found that a restraining order in a dissolution case dissolves automatically upon entry of the dissolution decree. The marriage of defendant and Tricia Bishop was dissolved by court order on July 18, 1994. The record demonstrates that defendant twice violated the restraining order during its effective period from April 4, 1994, to July 18, 1994. We therefore conclude that the court's finding that "[d]efendant violated a court issued Restraining Order on two occasions ..." was not erroneous.

The sentencing court relied on portions of defendant's confession and detective Neitzel's testimony to support this aggravating factor. The court did not base its finding that the particular circumstances of this crime were heinous solely on detective Neitzel's testimony that defendant shot Tricia in the head from point blank range. The court also noted that defendant spoke individually to each victim before shooting each of them, and that defendant shot each victim multiple times; this evidence came from defendant's videotaped confession, and not from detective Neitzel's testimony. Testimony from the doctor who performed the autopsy on Derek Oshinski supported Neitzel's assertion that defendant shot Derek in the head from a distance of less than eighteen inches. Even if Neitzel's statement regarding the point blank shot to Tricia's head was incorrect, we cannot conclude that there was insufficient support for this aggravating factor.

## B

■ Defendant next claims that the court failed to find mitigating circumstances otherwise supported by the evidence, and incorporates by reference his summation argument from the sentencing hearing; defendant emphasizes in his appellate brief only the court's failure to consider his videotaped confession as a significant mitigating factor.

Defendant fully confessed to the police less than six hours after committing the crimes to which he later pled guilty. Defendant contends this voluntary confession is a mitigator of the highest significance and entitled to great weight pursuant to this Court's holdings in *Brewer v. State*, 646 N.E.2d 1382 (Ind.1995), and *Evans v. State*, 598 N.E.2d 516 (Ind.1992). While not disputing the value of defendant's confession, we find his situation readily distinguishable from those cases.

In *Brewer*, we reduced an enhanced sentence for Murder to the presumptive sentence when the defendant confessed to committing the crime after it had remained unsolved for fifteen years. *Brewer*, 646 N.E.2d at 1386. Until the defendant in *Brewer* confessed to the crime, the police had been unable to solve the crime or to link it to anyone at all.

In *Evans*, the defendant was convicted of two counts of Rape, and one count each of intentional Murder and Felony Murder, and was sentenced to death. This Court reversed the death penalty on the Felony Murder count, based on the trial court's failure to consider several mitigating factors expressly supported by the evidence, primarily the defendant's personality disorder but, to a lesser extent, his voluntary confession to the police. Immediately after committing the crimes for which he ultimately was convicted, the defendant in *Evans* called the police and reported his illegal actions. He waited for the police at the scene of the crime and, after their arrival, gave a full confession, which he repeated in testimony at his sentencing hearing. *Evans*, 598 N.E.2d at 517–18.

Defendant is correct in asserting that his confession should be entitled to some mitigating weight, but his reliance on *Brewer* and *Evans* is misplaced, given the particular circumstances of the crime. Unlike the defendant in *Evans*, defendant did not suffer a serious personality disorder, nor did he alert the police to his whereabouts in order to facilitate his capture. Here, before defendant confessed to the police, he went to a friend's house to clean up and to talk to her. This friend then drove defendant to his sister's home where defendant told his sister, brother-in-law, and nephews that he loved them. Defendant walked from his sister's home to his mother's house, a distance of approximately five blocks, where he subsequently was taken into custody. And unlike the defendant in *Brewer*, who was never a suspect and who likely never would have been apprehended, defendant already had been identified as the person who shot Tricia and Derek, and the police had surrounded his mother's house. Successful escape and avoidance of punishment under these conditions were impossible.

■ Finding the existence of mitigating circumstances is within the discretion of the trial court. *Battles*, 688 N.E.2d at 1236; *Widener v. State*, 659 N.E.2d 529, 534 (Ind. 1995). The sentencing court is not required

to place the same value on a mitigating circumstance as does the defendant. *Battles,* 688 N.E.2d at 1236; *Widener,* 659 N.E.2d at 533–34. Although the court need not explain why it did not find certain mitigators to be significant, it may not ignore a mitigating factor which is clearly supported by the record. *Jones,* 675 N.E.2d at 1088. Here defendant attacks the weight accorded his voluntary confession; he does not allege that the sentencing court failed to consider it as a mitigating factor. Based on the above distinctions, we cannot say the sentencing court erred in failing to place as much significance on defendant's confession as does defendant.[16]

Defendant requests we also consider certain alleged mitigating circumstances "incorporated by reference from his summation argument at the sentencing hearing."[17] In its sentencing order, the court found the following mitigating circumstances to exist: (1) defendant's dependent children;[18] (2) defendant's expression of genuine remorse; (3) defendant's allegation that Tricia led him to believe reconciliation was possible; and (4) defendant's mental and emotional condition at the time of the murders. As such, defendant's claim is not that the trial court failed to consider any mitigating circumstances, but that the trial court failed to consider as mitigating everything defendant thought it should. Because the court found and discussed four mitigating factors, we do not agree with defendant that the sentencing court failed to consider the other mitigating factors defendant advances.

### C

· ■ Defendant argues that the sentencing court improperly imposed enhanced and consecutive sentences, and attacks the adequacy of the sentencing order in three respects: (1) the findings of aggravating circumstances are not supported by sufficient and credible evidence; (2) the court did not state how much weight it placed on defendant's videotaped confession as a mitigating circumstance; and (3) the court did not articulate the balancing process in which it engaged.

■ This Court has authority to revise sentences, but will not do so unless the sentence imposed is manifestly unreasonable. Ind. Const. art. VII, § 4; Ind.Appellate Rule 17(B); *Woods v. State,* 677 N.E.2d 499, 502 (Ind.1997). In reviewing enhanced sentences, we employ a three part review. The trial court's sentencing statement must (1) identify all of the significant mitigating and aggravating factors relied upon by the trial court; (2) state the specific reason why each circumstance is considered aggravating or mitigating; and (3) demonstrate that the court balanced the aggravating and mitigating circumstances and determined that the aggravators outweighed the mitigators. *Jones,* 675 N.E.2d at 1087; *Pruitt,* 622 N.E.2d at 474; *Henderson,* 489 N.E.2d at 71.

The sentencing order appears to be more than adequate in every respect. The court set forth its considerations in finding aggravating and mitigating circumstances and then identified each specific aggravating and mitigating factor it relied on in reaching its sentencing decision. The court specifically stated why each factor was either aggravating or mitigating (see parts II–A–1 to II–A–4 and II–B, *supra,* for a more detailed discussion of individual factors). Before sentencing defendant to the maximum enhanced sentence for Murder, the court stated that the aggravating factors outweighed mitigating factors with respect to each count. The court again stated that aggravators outweighed mitigators before imposing consecu-

---

**16.** We note that the sentencing order was not devoid of reference to defendant's confession. The court found as a mitigator defendant's expressions of remorse, both in his confession and in his statement made at the sentencing hearing, and believed defendant's remorse to be genuine.

**17.** At sentencing, defendant brought to the court's attention the following mitigating factors: (1) circumstances of the crime unlikely to reoc-

cur; (2) one victim facilitated the offense; (3) defendant's character and attitude; (4) maximum sentence imposes undue hardship on defendant and his children; and (5) various other relevant evidence, including defendant's surrender and confession, his apologies to the victims' families, and his showings of remorse in his confession and at sentencing.

**18.** Ind.Code § 35–38–1–7.1(c)(10) (1993).

tive sentences. While these statements regarding the court's balancing process would not by themselves support enhanced and consecutive sentences, the sentencing court, within its discussion of each mitigating factor, demonstrated that it had engaged in an evaluative process of the sort necessary for meaningful appellate review.

### D

Finally, defendant argues that the 120 year aggregate sentence is manifestly unreasonable in light of defendant's character, as exemplified by his videotaped confession and his statement at the sentencing hearing. The sentencing court found that defendant, with some degree of forethought, killed two people, but later expressed genuine remorse. After reviewing the care and attention given sentencing in this case, and after considering the manner in which defendant committed the crimes, the videotaped confession, and the statement at sentencing, we cannot say that the sentences imposed are manifestly unreasonable.[19]

### Conclusion

We find that (1) LaPorte Circuit Court properly entertained jurisdiction over this cause; and (2) defendant's sentence is not manifestly unreasonable or otherwise improper. Accordingly, we affirm the trial court.

SHEPARD, C.J., and DICKSON, SELBY and BOEHM, JJ., concur.

---

19. When these crimes were committed, there were two murder sentencing statutes in effect, both with maximum sentences of 60 years. *See Smith v. State,* 675 N.E.2d 693 (Ind.1996). Defendant raises no issue in this regard. In any event, we conclude the trial court clearly intended to impose the maximum sentence.