# MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**
Mar 14 2016, 7:03 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT

Ian O'Keefe
Chicago, Illinois

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Richard C. Webster
Deputy Attorney General
Indianapolis, Indiana

## IN THE
## COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Charles Darryl Jenkins, Jr., <br> *Appellant-Defendant*, <br><br> v. <br><br> State of Indiana, <br> *Appellee-Plaintiff*. | March 14, 2016 <br><br> Court of Appeals Case No. <br> 79A02-1504-CR-279 <br><br> Appeal from the Tippecanoe Superior Court <br><br> The Honorable Randy J. Williams, Judge <br><br> Trial Court Cause No. <br> 79D01-1408-F3-3 |

**Brown, Judge.**

[1] Charles Darryl Jenkins, Jr., appeals his conviction and sentence for robbery as a level 3 felony. Jenkins raises three issues which we revise and restate as:

    I.    Whether the evidence is sufficient to sustain his conviction;

    II.    Whether the trial court abused its discretion in sentencing him; and

    III.    Whether his sentence is inappropriate in light of the nature of the offense and the character of the offender.

We affirm.

## Facts and Procedural History

[2] In August 2014, Jenkins, born on September 10, 1992, Andre Brown, and Tyler Chandler stayed with Iesha Johnson in her apartment at 2314 Yeager Road. The men seemed to stop talking or changed the subject whenever Johnson entered the room, and she thought they probably did so because they were talking about her. Johnson observed the men carrying a bag with a string that they had with them everywhere.

[3] On August 5, 2014, Chandler and Brown went to a gun store and asked Robert Allen Robbins, the owner, if he would be interested in buying a firearm. Chandler and Brown left and returned with Jenkins. Chandler removed a twenty-two caliber Ruger "single six" revolver with a twelve-inch barrel from a bag. Transcript at 97. Robbins recognized the gun as being very unique, but was not interested because there were several deep indentations on the serial numbers.

[4]     On August 8, 2014, between 2:00 and 3:00 a.m., Chandler entered a Circle K in West Lafayette and asked Ellen Campbell, a cashier, for a fifty dollar bill in exchange for two twenty dollar bills and a ten dollar bill. Shortly after 3:00 a.m., Campbell was stacking cigarettes, turned around, and saw a short man who was about "five seven, five eight" with large hands, a black face, "light large cheekbones," was wearing a mask, a hoodie with white and red lettering, gray shoes, and a blue hat, and holding an old revolver with a long barrel. *Id.* at 24. A taller man wearing a mask, white Nike shoes with black trim, and gray sweatpants was with him. The shorter man pointed the gun at Campbell and asked her to open the safe. After Campbell said that she did not have the code or the key, the shorter man asked her to open the register. The shorter man grabbed a bag and told her to put the cash in the bag. The taller man "came around and got cigarettes and swishers and then he went and got cigarettes." *Id.* at 26. Taken were Newport cigarettes and White Owl cigarillos. The shorter man then grabbed Campbell's phone, and the two men ran southbound out of the building. Campbell called 911 and stated that the subjects were two black males.

[5]     When police arrived, Campbell was extremely upset, crying, shaking, and terrified that the men were going to return. The police attempted to ping Campbell's phone and found that it had been turned off so they were unable to locate it.

[6]     Later that morning, Johnson observed that Brown had a white Samsung phone. Brown told Johnson that he found it, that he thought it was dropped, and that

he wanted to sell it. Jenkins was present and "was like, yeah, we looked over here, the phone, this and that, yeah." *Id.* at 265. At some point that same day, Brown and two others went to the home of Samuel Booker and sold a black revolver to a man for about ninety dollars.[1]

[7] At about 11:00 a.m., Chandler and Brown entered the gun store. Brown was wearing gray pants and white shoes with black trim. Chandler provided Robbins with an address that did not match his identification, and Chandler and Brown left the store and returned around 4:19 p.m., at which point Chandler filled out an application to purchase a firearm. The address on Chandler's identification was 2314 Yeager Road.

[8] Slightly after 6:00 p.m. that day, West Lafayette Police Officer Stacon Wiete ended his shift after viewing a photograph of an unmasked individual from the surveillance video of the Circle K gas station, was driving home, and recognized a person walking in front of his vehicle as the person in the photograph. Officer Wiete observed the individual and two others enter a building at 2314 Yeager Road, and contacted the duty shift commander.

[9] On August 9, 2014, Robbins, the owner of the gun store, contacted police after seeing a newspaper article regarding the robbery at the Circle K, and noting that

---

[1] During direct examination, Booker indicated that Brown and two others came over on August 8, 2014, and sold a gun. Following a question from the jury of what date the gun was sold, Booker answered: "I don't even know the date to be truthful." Transcript at 296. During redirect examination, the prosecutor asked Booker: "[D]o you know if it was during August of 2014?" *Id.* at 297. Booker answered: "It was like around August." *Id.*

a long-barreled revolver that he had previously seen was used in the robbery. West Lafayette Police Sergeant Jonathan Eager met with Robbins and showed him still images of the weapon used in the robbery. The police retrieved video from Robbins's surveillance cameras, as well as the firearms transaction report with the address of 2314 Yeager Road completed by Chandler. Sergeant Eager determined that the individual that entered the Circle K approximately an hour prior to the robbery appeared to be the same person on the video at the gun store. He also noticed that the individual with that person in the gun store was wearing white shoes with black trim and later determined that person to be Brown.

[10] That same day, Officer Wiete saw a BMV photograph of a subject, confirmed that it was of the person he had observed the previous day, and identified him as Chandler. At 10:45 p.m., West Lafayette Patrol Sergeant Kevin Flyn made a traffic stop of a minivan that was under surveillance and identified the driver as Johnson and the passengers as Chandler, Jenkins, and Brown. Officers transported the three men to the county jail and determined that Chandler's shoe size was ten and that Jenkins's shoe size was eleven. At the jail, West Lafayette Police Officer Jonathan Morgan asked Brown what size shoes he wore, and Brown said that he wore size eleven, but when Brown removed his shoes, Officer Morgan noticed they were a size twelve.

[11] Meanwhile, the police took Johnson to the police station and then back to her apartment and executed a search warrant. The police recovered a gray sweatshirt, size twelve white and black Nike tennis shoes, size eleven gray and

white Nike shoes, a black "dream chasers" hoodie with white and red lettering, gray sweatpants with a cargo pocket near the thigh, a twenty-two caliber shell casing, Newport cigarettes, two cell phones, one of which was a white Samsung phone later determined to belong to Campbell, a Circle K plastic bag containing opened cigarillos or cigars, and Chandler's wallet. *Id.* at 140. Sergeant Eager determined that the gray Nike shoes were similar to the ones in the robbery and that the white and black Nike shoes appeared to be the same shoes in both the video at the gun store and the armed robbery. The hoodie discovered by police appeared to be the same hoodie worn by one of the men in the armed robbery video.

[12] On August 10, 2014, Sergeant Eager reviewed a statement of rights form with Brown, Brown signed the form, and Sergeant Eager interviewed him. Brown initially denied knowing about the robbery, but later admitted that he had knowledge of it and that Marqueese Huckabee and an unknown male had committed it. When asked about the white Samsung phone that belonged to Campbell, Brown said that he found it in a field or in the grass outside of 2314 Yeager Road and that the screen was flashing. He admitted to wearing the gray sweatpants and that the shoes belonged to him and stated that an unknown individual requested his shoes and clothing. Sergeant Eager later interviewed Huckabee and did not believe that he was involved in the robbery.

[13] On August 14, 2014, the State charged Jenkins, Brown, and Chandler with Count I, conspiracy to commit robbery as a level 3 felony; Count II, robbery as a level 3 felony; Count III, theft as a class A misdemeanor; and Count IV, theft

as a class A misdemeanor.  In January 2015, the State filed a motion to try Jenkins and Brown together, and the court granted the motion.

[14]  In February 2015, the court held a jury trial.  Campbell testified that she would be unable to identify the men that robbed her because they wore masks. Sergeant Eager testified that he interviewed Brown, that Brown initially denied knowing anything about the robbery, and that after he relayed certain facts to Brown, "that's when the story came out that it was these other people oh, and they were wearing my clothes." *Id.* at 235.  Johnson testified that Brown wore the sweatpants recovered during the search and that she never saw anyone else wear those sweatpants.  She testified that Jenkins wore the gray Nike shoes and sometimes wore a blue Indiana Pacers hat.  She also testified that she did not own a gun in August 2014 and that she had no reason to have bullets in her apartment.

[15]  The jury found Jenkins guilty as charged.  The court found that Counts I, III, and IV merged into Count II, robbery committed while armed with a deadly weapon as a level 3 felony, and entered judgment of conviction on that count.

[16]  On March 30, 2015, the court held a sentencing hearing.  Jenkins stated in part:

> I just want to let you know that I am sorry for the victims in this case.  I don't want to make it seem like I don't feel no remorse for the victims or what happened in this case, but I still feel like I was found guilty, you know what I'm saying, only by association according to the evidence that I saw at trial.

*Id.* at 372.

[17] The court found as a mitigator that Jenkins had taken advantage of opportunities while incarcerated and noted that he had obtained his high school equivalency diploma and other achievement awards. The court found his criminal history, history of substance abuse, and revocations of probation to be aggravators, found that the aggravators outweighed the mitigators, and sentenced Jenkins to eleven years executed in the Department of Correction.

### Discussion

[18] The first issue is whether the evidence is sufficient to sustain Jenkins's conviction. He argues that there was insufficient evidence that he was in fact the one who committed the robbery due to the lack of physical evidence against him at trial, and that there was insufficient evidence to show that he entered into any agreement with either Brown or Chandler to commit a robbery.

[19] The State argues that the evidence is sufficient to establish that Jenkins was one of the robbers of the Circle K and points to the discovery of property taken during the robbery and clothing similar to that worn by both robbers in the apartment where Jenkins had been living. The State also points to Johnson's testimony in which she identified the hat and shoes as belonging to and worn by Jenkins.

[20] When reviewing claims of insufficiency of the evidence, we do not reweigh the evidence or judge the credibility of witnesses. *Jordan v. State*, 656 N.E.2d 816, 817 (Ind. 1995), *reh'g denied*. Rather, we look to the evidence and the reasonable inferences therefrom that support the verdict. *Id.* We will affirm the

conviction if there exists evidence of probative value from which a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt. *Id.*

[21] Elements of offenses and identity may be established entirely by circumstantial evidence and the logical inferences drawn therefrom. *Bustamante v. State*, 557 N.E.2d 1313, 1317 (Ind. 1990). Identification testimony need not necessarily be unequivocal to sustain a conviction. *Heeter v. State*, 661 N.E.2d 612, 616 (Ind. Ct. App. 1996). Inconsistencies in identification testimony impact only the weight of that testimony, because it is the jury's task to weigh the evidence and determine the credibility of the witnesses. *Gleaves v. State*, 859 N.E.2d 766, 770 (Ind. Ct. App. 2007) (citing *Badelle v. State*, 754 N.E.2d 510 (Ind. Ct. App. 2001), *trans. denied*). As with other sufficiency matters, we will not weigh the evidence or resolve questions of credibility when determining whether the identification evidence is sufficient to sustain a conviction. *Heeter*, 661 N.E.2d at 616. Rather, we examine the evidence and the reasonable inferences therefrom that support the verdict. *Id.*

[22] To the extent that Jenkins's arguments challenge the jury's finding of guilt as to Counts I, III, or IV, we observe that the trial court found that Counts I, III, and IV merged into Count II, robbery committed while armed with a deadly weapon as a level 3 felony, and entered judgment of conviction and sentenced him on only that count. Accordingly, we focus on whether the evidence is sufficient to sustain Jenkins's conviction for Count II, robbery committed while armed with a deadly weapon as a level 3 felony.

[23] Ind. Code § 35-42-5-1 governs the offense of robbery as a level 3 felony and provides that "[a] person who knowingly or intentionally takes property from another person or from the presence of another person: (1) by using or threatening the use of force on any person; or (2) by putting any person in fear; commits robbery . . . ." "[T]he offense is a Level 3 felony if it is committed while armed with a deadly weapon . . . ." Ind. Code § 35-42-5-1. The State charged that Jenkins, Brown, and Chandler

> did knowingly or intentionally take property, to wit: U.S. Currency, merchandise, a cell phone, or other property, from another person or the presence of another person, to wit: Ellen Campbell, by using or threatening the use of force or by putting the said Ellen Campbell in fear, committed while armed with a deadly weapon, to wit: a handgun . . . .

Appellant's Appendix at 10.

[24] Regarding accomplice liability, Ind. Code § 35-41-2-4 provides that "[a] person who knowingly or intentionally aids, induces, or causes another person to commit an offense commits that offense . . . ." "'[A]n accomplice is criminally responsible for all acts committed by a confederate which are a probable and natural consequence' of their concerted action." *McGee v. State*, 699 N.E.2d 264, 265 (Ind. 1998) (quoting *Vance v. State*, 620 N.E.2d 687, 690 (Ind. 1993)). It is not necessary that a defendant participate in every element of a crime to be convicted of that crime under a theory of accomplice liability. *Bruno v. State*, 774 N.E.2d 880, 882 (Ind. 2002), *reh'g denied*. In determining whether there was sufficient evidence for purposes of accomplice liability, we consider such

factors as: (1) presence at the scene of the crime; (2) companionship with another at the scene of the crime; (3) failure to oppose commission of the crime; and (4) course of conduct before, during, and after occurrence of the crime. *Id.* A defendant's mere presence at the crime scene, or lack of opposition to a crime, standing alone, is insufficient to establish accomplice liability. *Tobar v. State*, 740 N.E.2d 109, 112 (Ind. 2000).

[25] The record reveals that on August 5, 2014, Jenkins went to the gun store with Brown and Chandler where Chandler removed the revolver with the long twelve inch barrel. Robbins described the gun as being "very unique." Transcript at 97. He also testified that, as a gun store owner, he saw a hundred guns per week and had seen only two of the particular kind of gun in Brown's possession. A similar gun was later used to commit the robbery.

[26] Chandler, who was staying with Jenkins and Brown in Johnson's apartment, entered the Circle K in West Lafayette, on August 8, 2014, and asked Campbell, the cashier, for a fifty dollar bill in exchange for two twenty dollar bills and a ten dollar bill. Shortly after 3:00 a.m., two men entered the Circle K, and the shorter man who was about "five seven, five eight," with large hands, a black face, "light large cheekbones," wearing a mask, a hoodie with white and red lettering, gray shoes, and a blue hat, pointed a gun at Campbell. *Id.* at 24. Detective Greene described Brown as being "around six foot, six foot one" and Jenkins as being "about five eight" and "a hundred fifty, hundred sixty pounds" in August 2014. *Id.* at 272-273. The jury was able to compare the descriptions of Jenkins, its view of Jenkins, and the persons on the surveillance video.

[27]     The police discovered Campbell's phone, Newport cigarettes, cigarillos, and a Circle K bag in the apartment where Jenkins had been staying. The police also discovered twenty-two caliber rounds which were the same caliber as the weapon used during the robbery.

[28]     Additionally, the police recovered a black "dream chasers" hoodie with white and red lettering and gray shoes. *Id.* at 140. The shorter suspect in the surveillance video wore a black hoodie with white and red lettering and gray shoes, and Sergeant Eager testified that the gray shoes and hoodie with the white and red lettering recovered from the apartment were similar to the shoes and hoodie seen in the Circle K surveillance video. Police recovered a blue hat in the apartment, the shorter man in the surveillance video of the Circle K wore a blue hat, and Johnson testified that Jenkins sometimes wore the blue hat that was recovered. The sizes of the shoes recovered from Johnson's apartment matched the sizes of the shoes that Jenkins and Brown were wearing when they were taken to the jail. We also note that the police recovered a pair of gray sweatpants with a cargo pocket. Detective Greene testified he believed the sweatpants were worn by the taller suspect at the robbery, and Johnson testified that Brown wore the sweatpants recovered during the search and that she never saw anyone else wear them. Again, the jury was able to compare the shoes and clothing with the shoes and clothing worn in the surveillance videos, and, as fact-finder, reasonably could have concluded that Jenkins was the shorter man in the Circle K video.

[29] Based upon the record, we conclude that the State presented evidence of a probative nature from which a reasonable trier of fact could have found Jenkins guilty beyond a reasonable doubt of robbery as a level 3 felony.

## II.

[30] The next issue is whether the trial court abused its discretion in sentencing Jenkins. We review the sentence for an abuse of discretion. *Anglemyer v. State*, 868 N.E.2d 482, 490 (Ind. 2007), *clarified on reh'g*, 875 N.E.2d 218 (Ind. 2007). An abuse of discretion occurs if the decision is "clearly against the logic and effect of the facts and circumstances before the court, or the reasonable, probable, and actual deductions to be drawn therefrom." *Id.* A trial court abuses its discretion if it: (1) fails "to enter a sentencing statement at all;" (2) enters "a sentencing statement that explains reasons for imposing a sentence – including a finding of aggravating and mitigating factors if any – but the record does not support the reasons;" (3) enters a sentencing statement that "omits reasons that are clearly supported by the record and advanced for consideration;" or (4) considers reasons that "are improper as a matter of law." *Id.* at 490-491. If the trial court has abused its discretion, we will remand for resentencing "if we cannot say with confidence that the trial court would have imposed the same sentence had it properly considered reasons that enjoy support in the record." *Id.* at 491. The relative weight or value assignable to reasons properly found, or those which should have been found, is not subject to review for abuse of discretion. *Id.*

Jenkins argues that the trial court abused its discretion by failing to consider his remorse. He asserts that he expressed remorse for what happened and rightfully maintained his innocence due to the highly speculative and circumstantial nature of the evidence. He concedes that the hardship incarceration would have on his children was not specifically argued as a mitigating factor, but contends that the trial court abused its discretion by failing to find it as such.

The determination of mitigating circumstances is within the discretion of the trial court. *Rogers v. State*, 878 N.E.2d 269, 272 (Ind. Ct. App. 2007), *trans. denied*. The trial court is not obligated to accept the defendant's argument as to what constitutes a mitigating factor, and a trial court is not required to give the same weight to proffered mitigating factors as does a defendant. *Id.* An allegation that the trial court failed to identify or find a mitigating factor requires the defendant to establish that the mitigating evidence is both significant and clearly supported by the record. *Anglemyer*, 868 N.E.2d at 493. If the trial court does not find the existence of a mitigating factor after it has been argued by counsel, it is not obligated to explain why it has found that the factor does not exist. *Id.*

With respect to Jenkins's argument regarding his remorse, a trial court's determination of a defendant's remorse is similar to a determination of credibility. *Pickens v. State*, 767 N.E.2d 530, 534-535 (Ind. 2002). Without evidence of some impermissible consideration by the court, we accept its determination of credibility. *Id.* The trial court is in the best position to judge

the sincerity of a defendant's remorseful statements. *Stout v. State*, 834 N.E.2d 707, 711 (Ind. Ct. App. 2005), *trans. denied*. At sentencing, Jenkins stated:

> I just want to let you know that I am sorry for the victims in this case. I don't want to make it seem like I don't feel no remorse for the victims or what happened in this case, but I still feel like I was found guilty, you know what I'm saying, only by association according to the evidence that I saw at trial.

Transcript at 372. The court was able to consider Jenkins's statements, and based upon our review of the sentencing transcript and the record we cannot say that the trial court abused its discretion by not finding Jenkins's alleged remorse to be a mitigating circumstance. *See Stout*, 834 N.E.2d at 711 (holding that the court did not err in not finding the defendant's alleged remorse to be a mitigating factor).

[34] As for the burden on Jenkins's children, "[i]f the defendant does not advance a factor to be mitigating at sentencing, this Court will presume that the factor is not significant and the defendant is precluded from advancing it as a mitigating circumstance for the first time on appeal." *Henley v. State*, 881 N.E.2d 639, 651 (Ind. 2008) (quoting *Spears v. State*, 735 N.E.2d 1161, 1167 (Ind. 2000), *reh'g denied*). Waiver notwithstanding, "absent special circumstances, trial courts are not required to find that imprisonment will result in an undue hardship." *Dowdell v. State*, 720 N.E.2d 1146, 1154 (Ind. 1999); *see also Benefield v. State*, 904 N.E.2d 239, 247-248 (Ind. Ct. App. 2009) (recognizing that incarceration "almost always" works a hardship on others and concluding that the defendant failed to show "special circumstances" because there were other people who

could take care of the defendant's mother while she was incarcerated), *trans. denied*. The presentence investigation report ("PSI") indicates that Jenkins has three children by two different women, that he has contact with one child three times per month and with the other two children on a daily basis, that he is not ordered to pay child support, and that he lived with a friend. We cannot say that Jenkins has demonstrated that the mitigating evidence as to a burden on his children is both significant and clearly supported by the record or that the trial court abused its discretion.

### III.

[35] The next issue is whether Jenkins's sentence is inappropriate in light of the nature of the offense and the character of the offender. Ind. Appellate Rule 7(B) provides that we "may revise a sentence authorized by statute if, after due consideration of the trial court's decision, [we find] that the sentence is inappropriate in light of the nature of the offense and the character of the offender." Under this rule, the burden is on the defendant to persuade the appellate court that his or her sentence is inappropriate. *Childress v. State*, 848 N.E.2d 1073, 1080 (Ind. 2006).

[36] Jenkins argues that his sentence of eleven years, one year above the advisory, is inappropriate because his adult criminal history consists of only one class D felony, two misdemeanors, and a pending case in Iowa. He contends that his sentence was disproportionately dissimilar to Brown's sentence of ten years with eight years executed and two years suspended to probation even though

Brown was convicted of the same acts and the court found similar aggravating and mitigating circumstances when deciding Brown's sentence.

[37] Our review of the nature of the offense reveals that Jenkins and another man entered the Circle K wearing masks shortly after 3:00 a.m. and that Jenkins pointed a gun at Campbell, asked her to open the safe and the register, grabbed a bag, told her to put the cash in the bag, grabbed Campbell's cell phone, and then ran out of the building with the other man.

[38] Our review of the character of the offender reveals that as a juvenile, Jenkins was alleged to have committed robbery resulting in bodily injury as a class B felony, receiving stolen auto parts as a class D felony, and conversion as a class A misdemeanor if committed by an adult, but these cases were dismissed. In 2010, Jenkins was adjudicated a delinquent child for carrying a handgun without a license. As an adult, Jenkins was convicted of attempted residential entry as a class D felony in 2011, and failure to stop after an accident resulting in damage to an unattended vehicle as a class B misdemeanor and possession of marijuana as a class A misdemeanor in 2013. He was also charged with first degree robbery in Iowa, and the PSI lists an offense date of April 23, 2014.[2]

---

[2] To the extent Jenkins asserts that the pending case for robbery in Iowa should not require an aggravated sentence, we observe that the Indiana Supreme Court has stated:

> This Court has held that "allegations of prior criminal activity need not be reduced to conviction in order to be considered a proper aggravating factor." *Beason v. State*, 690 N.E.2d 277, 281 (Ind. 1998) (citing *Tunstill v. State*, 568 N.E.2d 539, 545 (Ind. 1991) (noting that a sentencing court may properly consider as an aggravating factor prior arrests and pending charges not reduced to convictions because they reflect the defendant's character and indicate a risk of future crime)).

Four petitions to revoke probation have been filed against him with two being found true.

[39] Jenkins obtained a high school equivalency diploma in 2014, has three children by two different women, has contact with one child three times per month and with the other two children on a daily basis, is not ordered to pay child support, and lived with a friend at the time of the offense.

[40] He reported first consuming alcohol at the age of fourteen and drugs at the age of fifteen, and admitted to using marijuana and ecstasy. He also reported not completing court ordered group therapy substance abuse treatment in Lake County in 2011.

[41] The PSI indicates that his overall risk assessment score placed him in the high risk to reoffend category. The probation officer completing the PSI recommended a sentence of twelve years executed in the Department of Correction.

[42] After due consideration of the trial court's decision, we cannot say that the sentence of eleven years is inappropriate in light of the nature of the offense and the character of the offender. To the extent that Jenkins compares his eleven year sentence to the sentence of ten years with two years suspended received by Brown, we need not compare sentences of codefendants although we are not

*Bacher v. State*, 722 N.E.2d 799, 804 (Ind. 2000).

precluded from comparing sentences among those convicted of the same or similar crimes. *Knight v. State*, 930 N.E.2d 20, 22 (Ind. 2010). In sentencing Brown, the trial court found two mitigators that it did not find here, namely that Brown's incarceration would cause an undue hardship on his dependent child and that Brown took responsibility for his actions. Further, we observe that the evidence indicates that Jenkins was the man holding the gun during the robbery and that he pointed it at Campbell. We cannot say that the dissimilarity between the sentences requires revision of Jenkins's sentence.

## *Conclusion*

[43]     For the foregoing reasons, we affirm Jenkins's conviction and sentence.

[44]     Affirmed.


Kirsch, J., and Mathias, J., concur.